DICONZA TRAURIG KADISH LLP
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Fax: (212) 682-4942
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@dtklawgroup.com
      hbreakstone@dtklawgroup.com

*Proposed Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| VORAS ENTERPRISE INC., | Case No. 17-45570 (NHL) |
|     Debtor. | |

-----------------------------------------------------------x

## DECLARATION OF JEFFREY E. DUNSTON
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

JEFFREY E. DUNSTON, being duly sworn, declares as follows:

1.    I am the Chief Executive Officer of Voras Enterprise Inc. (the "**Debtor**" or "**Voras**"), a New York not-for-profit corporation.

2.    I am acting herein on behalf of the Debtor, and am authorized to submit this Declaration pursuant to the Eastern District of New York Local Bankruptcy Rule 1007-2 in support of the voluntary petition filed contemporaneously herewith.

3.    Unless otherwise stated, I have personal knowledge of the facts contained herein. I am aware of the business and financial condition of the Debtor.

4.    Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

5.    Voras is not a "small business debtor" as such term is used under section 101(51)(D) of the Bankruptcy Code.

6.    Voras is a "single asset real estate debtor" as such term is used under section 101(51)(B) of the Bankruptcy Code.

7.    No other bankruptcy petition has been filed for this Debtor.

8.    No committee of creditors has been formed in this case to date.

## Background

9.    The Debtor is a not-for-profit corporation organized under the laws of New York on or about July 31, 2012.  The Debtor owns and operates a commercial building located at 619 Throop Avenue, Brooklyn, New York 11216 (the "**Building**").

10.    The Debtor's stated purpose upon its organization was, and remains, (i) owning, developing, rehabilitating, mortgaging, leasing, maintaining and/or disposing of real property for the purpose of accommodating and promoting commercial and charitable activities intended to promote neighborhood revitalization and combat community deterioration; and (ii) conducting any and all lawful activities which may be useful in accomplishing the foregoing purposes (together, the "**Corporate Purpose**").

11.    Northeast Brooklyn Housing Development Corporation (the "**NEB**") is the sole member of the Debtor.

12.    NEB was incorporated in January 1985 as a 501(c)(3) not-for-profit organization with a mission to provide affordable rental housing to low-income residents of Central Brooklyn, with an initial focus on advocacy through block associations and merchant and tenant organizing.

13.    The Debtor is a corporation as defined in subparagraph (a)(5) of Section 102 of the NPCL and is a Type C corporation under section 201 of the NPCL.

14.    The Debtor is organized and operated exclusively for charitable purposes described in section 501(c)(4) of Title 26 of the United States Code that qualify for exemption from federal income taxation under section 501(a) of Title 26 of the United States Code.

15.    The public or quasi-public objective to be achieved by formation of the Debtor was, and remains, to provide assistance in the improvement of the environment and quality of life of citizens in deteriorated urban areas.

16.    The Debtor was not organized for pecuniary profit or financial gain.  All income and earnings of the Debtor were, and remain, to be used exclusively for corporate purposes. No part of the net income or net earnings of the Debtor have inured to the benefit or profit of any member, trustee, director or officer of the Debtor or any private individual, firm, corporation or association, except reasonable compensation, payments, and distributions made in furtherance of the Corporate Purpose.

17.    Given that NEB is the sole member of the Debtor and the Corporate Purpose of the Debtor and its corporate structure, the operations of the Debtor are executed principally by NEB, Voras's sole member.  On behalf of Voras, NEB executes the administrative, financial and operational support for the Debtor.

18.    The Building is a five-story commercial office building in the Bedford-Stuyvesant neighborhood of Brooklyn.  It is partially leased, with approximately five commercial tenants.  The rehabilitation and occupancy of the Building is part of the effort to improve central Brooklyn for residents and the business community.

19.     The Debtor has insurance on the Building, which is current, and intends to preserve such policy.  Proof of insurance will be provided to the United States Trustee.

20.     The Debtor continues its effort to lease up the Building.  Fully leased the Debtor believes that the Building has potential to be self-sufficient and support a refinance and a chapter 11 reorganization.

**Circumstance Leading to the<br>Commencement of this Chapter 11 Case**

**A.      The Woodbridge Mortgage**

21.     On June 13, 2015, the Debtor entered into a mortgage with Woodbridge Mortgage Investment Fund 3, LLC ("**Woodbridge**") in the amount of $6,000,000.00 with interest at the initial rate of 12% per annum, payable interest only, as set forth in the applicable note.

22.     The mortgage securing the note was recorded in the Office of the Kings County Registrar on June 17, 2015 in CRFN: 2015000207334.

23.     On June 3, 2015, a *Holdback Reserve Agreement for Repairs* (the "**Holdback Agreement**") was entered into for an amount of $1,540,000.00 between the Debtor and Woodbridge (the "**Repair Reserve Funds**").  The Repair Reserve Funds were to assure the improvement of the Building.

24.     The Debtor expended substantial portions of the Repair Reserve Funds on improving the Building in accordance with the Holdback Agreement.

25.     Despite substantial Repair Reserve Funds having being expended, the Debtor never was properly reimbursed and the amount was never properly credited or applied from the holdback reserve or set off, adjusting and paying down the note.

26.    The failure to properly account for the expenditure of the Repair Reserve Funds directly resulted in the Debtor's failure to make payments on the note.  Had the funds been made available, the Debtor would not have had to resort to pay out of pocket for the rehabilitation, resulting in non-payments under the note.

27.    Moreover, these disputes were exacerbated as the lender never provided accurate payoff statements to allow refinancing of the note.

28.    The mortgage was assigned pursuant to an assignment of mortgage dated October 2, 2015, from Woodbridge to 124 NY Inc. ("**124 NY**"), which assignment of mortgage was recorded in the Office of the Kings County Registrar on October 30, 2015 in CRFN: 2015000389206.

**B.**    **The Foreclosure Litigation**

29.     On February 15, 2016, 124 NY as assignee of Woodbridge commenced a commercial foreclosure action in the Supreme Court of the State of New York, county of Kings (the "**State Court**"), against Voras and several other parties titled *124 NY, Inc. v. Voras Enterprise, Inc., Northeast Brooklyn Housing Development Corporation, Criminal Court of the City of New York, New York Design Architects, LLP, the People of the State of New York, the City of New York* (No. 502040/2016) (the "**Foreclosure Action**").

30.    124 NY commenced the commercial foreclosure action alleging that the Debtor failed to comply with the terms and provisions of the mortgage by failing to pay the monthly installments of principal and interest due and owing on November 1, 2015, and thereafter.

31.    The amounts owed are contested by the Debtor, as the improvement budget reflected in the Holdback Agreement was agreed upon between the Debtor and

Woodbridge, and therefore, amounts expended should have been deducted from the principal amount.

32.    On November 25, 2015, the State Court entered an *Order of Reference* granting the plaintiff's application for the appointment of a referee on default [NYSCEF Doc. No. 48]. Other litigation ensued.

33.    As the litigation in the State Court stands, there is an equitable judgment of foreclosure by default and no liquidated amount of the judgment to 124 NY. The referee's initial calculations are substantially inaccurate and overstated

34.    Efforts to challenge the default, the calculation and other aspects of the commercial foreclosure action followed. A Notice of Appeal of the foreclosure judgment is pending.

35.    Throughout the foreclosure proceedings, the Debtor has continuously sought out a replacement lender and intends to continue to do so within the parameters of the requirements of single asset real estate debtors set forth in the Bankruptcy Code. The Debtor believes it can consummate a transaction within the parameters of chapter 11.

36.    In order to avoid disposition of the Building in accordance with a foreclosure ordered on default and assuming an artificially inflated amount due, the Debtor files this chapter 11 case.

37.    The unanimous consent of the directors providing authority to file this chapter 11 case and providing related authority is attached hereto as Exhibit "A".

## Other Disclosures Required by Local Rule 1007-4

38.    Local Rule 1007-4 requires the Debtor to disclose certain information. The information is outlined below and set forth in the exhibits attached hereto.

39.    As required by Local Bankruptcy Rule 1007-4(a)(i), the Debtor is required to set forth whether the debtor is a small business debtor within the meaning of Section 101(51)(D).  As previously stated, the Debtor is not a small business debtor under this statute.

40.    As required by Local Bankruptcy Rule 1007-4(a)(v), the Debtor must provide a list of the Debtor's twenty (20) largest unsecured creditors. The list is attached hereto as Exhibit "B".

41.    As required by Local Bankruptcy Rule 1007-4(a)(vi), the Debtor must provide a list of the Debtor's five largest secured creditors.  The list is attached hereto as Exhibit "C".

42.    As required by Local Bankruptcy Rule 1007-4(a)(vii), the Debtor must provide a summary of the Debtor's assets and liabilities.  Attached as Exhibit "D" is the Debtor's latest Balance Sheet, which reflects the Debtor's assets and liabilities as of October 25, 2017.

43.    As required by Local Bankruptcy Rule 1007-4(a)(viii), the Debtor is required to disclose whether any of its securities are publicly held.  The Debtor has no publicly traded securities.

44.    As required by Local Bankruptcy Rule 1007-4(a)(ix), the Debtor is not aware of any property being held in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

45.    As required by Local Bankruptcy Rule 1007-4(a)(x), the Debtor must provide a list of the premises owned, leased or held under any other arrangement from

which the debtor operates its business.  The Debtor owns the Building located at 619

Throop Avenue, Brooklyn, New York 11216.

46.     As required by Local Bankruptcy Rule 1007-4(a)(xi), the Debtor must

provide a list of the locations of the Debtor's significant assets, books and records.  The

Debtor's main asset is the Building located at 619 Throop Avenue, Brooklyn, New York

11216.  The Debtor has a bank account with Bank of America.  The Debtor's books and

records are located with NEB at 132 Ralph Avenue, Brooklyn, New York 11233.

47.     As required by Local Bankruptcy Rule 1007-4(a)(xii), the Debtor must

provide the nature and present status of each action or proceeding, pending or threatened,

against the debtor or its property where a judgment against the debtor or a seizure of its

property may be imminent.  Attached hereto as Exhibit "E" is a schedule of lawsuits

currently pending where the Debtor is a party.

48.     As required by Local Bankruptcy Rule 1007-4(a)(xiii), the Debtor must

provide the names of the debtor's existing senior management, their tenure with the

debtor, and a summary of their relevant responsibilities and experience.  As of October

25, 2017, the directors and officers of the Debtor are as follows:

> Jeffrey Dunston, 5 years – Director and President of the
> Debtor and oversees the management and operation of the
> entity, including but not limited to, marketing available office
> space, negotiating and executing leases, coordinating day-to-
> day activities.  Has over 25 years of experience in the field of
> community, economic and real estate development that has
> resulted in community assets totaling $150MM.

> Elliott Robinson, Jr, 5 years – Director and Treasurer of the
> Debtor and is responsible for oversight of financial
> operations, which includes reviewing, approving and issuing
> checks, and reviewing audits.  Mr. Robinson is a retired
> union organizer and experienced board member.  Mr.

8

Robinson is also chair or member of local community based boards.

Nathaniel Montgomery – Director and Secretary of the Debtor and is responsible for recording minutes, reviewing resolutions and consents. Mr. Montgomery has 18 years of experience as an executive with an extensive background in management. He is well versed in real estate finance, construction management, and environmental issues. Mr. Montgomery's primary focus is organizational operations and identifying real estate development opportunities which has resulted in community assets totaling $100MM.

49.    As required by Local Bankruptcy Rule 1007-4(a)(xiv), the debtor must provide the estimated amount of weekly payroll. The Debtor maintains no weekly payroll.

50.    As required by Local Bankruptcy Rule 1007-4(a)(xv), the debtor must provide the amount paid and proposed to be paid to officers and directors for services for the 30-day period following the filing of the chapter 11 petition. The Debtor will pay no officers and directors during the 30-day period following date of the Order for Relief.

51.    As required by Local Bankruptcy Rule 1007-4(a)(xvi), the debtor must provide a schedule for the 30-day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remaining unpaid, other than professional fees, and any other relevant information. Attached as Exhibit "F" is the required 30-day cash flow schedule.

52.    As required by Local Bankruptcy Rule 1007-4(a)(xvii), the Debtor must provide additional information that may be necessary to fully inform the Court of the Debtor's rehabilitation prospects. Attached as Exhibit "G" is a 13-week cash flow projection.

I hereby declare, under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, that the foregoing is true to the best of my knowledge, information and belief.

Dated: New York, New York
       October 26, 2017

_____
Jeffrey E. Dunston
*President and Chief Executive Officer of*
*Voras Enterprise Inc.*

<u>INDEX OF EXHIBITS</u>

Exhibit "A" – Unanimous Consent of Directors

Exhibit "B" – Debtor's Twenty (20) Largest Unsecured Creditors

Exhibit "C" – Debtor's Five Largest Secured Creditors

Exhibit "D" – Balance Sheet

Exhibit "E" – Schedule of Lawsuits

Exhibit "F" – 30-Day Cash Flow Schedule

Exhibit "G" – 13-Week Cash Flow Projection