ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Allen G. Kadish
Harrison H.D. Breakstone
Tel: (212) 682-4940
Fax: (212) 682-4942
Email:  akadish@archerlaw.com
         hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                              Chapter 11

VORAS ENTERPRISE INC.,                              Case No. 1-17-45570 (NHL)

          Debtor.

-----------------------------------------------------------x

## DEBTOR'S MOTION FOR ORDERS
### (A)(I) APPROVING SALE PROCEDURES;
### (II) APPROVING STALKING HORSE PROTECTIONS;
### (III) SCHEDULING AUCTION AND HEARING DATES
### TO CONSIDER SALE OF CERTAIN ASSETS; (IV) APPROVING
### FORM AND MANNER OF NOTICE OF SALE PROCEDURES AND
### NOTICE OF POTENTIAL ASSUMPTION, ASSIGNMENT, AND/OR SALE OF
### CONTRACTS AND LEASES; AND (V) GRANTING RELATED RELIEF; AND
### (B)(I) AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR
### OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;
### (II) AUTHORIZING AND APPROVING CONTRACT THERETO;
### (III) APPROVING THE ASSUMPTION, ASSIGNMENT, AND/OR SALE OF
### CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
### RELATED THERETO; (IV) PROVIDING FOR PAYMENT OF SALE
### PROCEEDS TO SECURED LENDER; AND (V) GRANTING RELATED RELIEF

TO THE HONORABLE NANCY H. LORD,
UNITED STATES BANKRUPTCY JUDGE:

          VORAS ENTERPRISE INC., debtor and debtor in possession (the "**Debtor**"), by

and through its counsel, hereby moves this Court for orders:  (A) (i) approving sale and bidding

procedures ("**Bid Procedures**") in connection with the proposed sale of the Debtor's property, a five-story commercial building, located at 601-609 Throop Avenue, Brooklyn, New York 11216 (the "**Property**"), (ii) approving stalking horse protections; (iii) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**"); (iv) approving the form of notice of the Auction and Sale Hearing and the form and manner of notice of the assumption, assignment, and/or sale of executory contracts and unexpired leases and related cure amounts, if any (the "**Cure Notice**"); and (B) (i) authorizing the sale of the Assets free and clear of liens, claims, encumbrances, and other interests pursuant to the terms of the real estate sale contract (the "**Contract**") substantially in the form filed herewith; (ii) authorizing and approving the Contract; (iii) approving the assumption, assignment, and/or sale of executory contracts and unexpired leases, as necessary; (iv) providing for the payment of net proceeds from the sale of the Property to 124 NY Inc. ("**124 NY**"), the Debtor's senior secured mortgage lender, to the extent necessary to fully satisfy 124 NY's allowed secured claim (the "**124 NY Allowed Secured Claim**"); and (v) granting related relief.  In support of this Motion, the Debtor respectfully represents:

## INTRODUCTION

1.      As of the chapter 11 petition date, the Debtor was indebted to 124 NY in the aggregate outstanding amount of approximately $7,476,537.50, pursuant to that certain Commercial Real Estate Mortgage Note dated as of June 3, 2015 (the "**Pre-petition Note**").[1] The Debtor's obligations to 124 NY under the Pre-Petition Note are secured by first-priority, perfected security interests in the Property.

2.      In an open hearing, the Debtor was directed to, among other things, seek the sale of the Property, and in support thereof seeks an order approving bid procedures for the sale of the Property.

---

[1]  A 124 NY payoff statement as of the chapter 11 petition date is attached as **Exhibit B**.

3.      As of the date of this Motion, the 124 NY Allowed Secured Claim is at least approximately $7.8 million, and continues to accrue interest and fees due under the terms of the mortgage.[2]

## JURISDICTION, VENUE AND STATUTORY PREDICATES

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is core pursuant to 28 U.S.C. §§ 157(b)(1) and (2)(A), (M), (N) and (O).

6.      Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

7.      The statutory predicates for the relief sought herein are sections 105(a), 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Local Bankruptcy Rules 6004-1 and 6006-1, and Administrative Order No. 557 of the United States Bankruptcy Court for the Eastern District of New York ("**Administrative Order 557**").

## PROCEDURAL BACKGROUND

8.      On October 26, 2017, the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.      The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the first day declaration filed herein [Docket No. 6], incorporated herein by reference.

---

[2]      A more precise figure will be available to Qualified Bidders on or before the Bid Deadline (as defined below).

10.     The Debtor continues in possession of its property and continues to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.     No trustee or committee has been appointed in the case.

12.     The Debtor has filed an application to retain Keen-Summit Capital Partners LLC ("**Keen**") as its real estate advisor.

13.     Keen's professionals have formulated a marketing strategy and a dual-track process to enable the Debtor to successfully complete a sale of the Property or a refinancing at a price sufficient to satisfy the 124 NY Allowed Secured Claim in full, cover administrative expenses, and provide a return to unsecured creditors.  As noted above, while the Debtor is simultaneously pursuing a sale process and refinancing process, the subject of this Motion is limited to approval of a sale process.  The approval of any refinancing transaction will be the subject of a plan, was filed with the Court on January 24, 2018, as may be amended.

**VORAS'S BUSINESS OPERATIONS**

14.     The Debtor is a not-for-profit corporation organized under the laws of New York on or about July 31, 2012.  The Debtor owns and operates the Building.

15.     The Building is a five-story commercial office building in the Bedford-Stuyvesant neighborhood of Brooklyn.  It is partially leased, with commercial tenants and a roof antenna lease.  The rehabilitation and occupancy of the Building is part of the effort to improve central Brooklyn for residents and the business community.

16.     The Debtor's stated purpose upon its organization was, and remains, (i) owning, developing, rehabilitating, mortgaging, leasing, maintaining and/or disposing of real property for the purpose of accommodating and promoting commercial and charitable activities intended to

promote neighborhood revitalization and combat community deterioration; and (ii) conducting any and all lawful activities which may be useful in accomplishing the foregoing purposes.

17.    The Debtor is a corporation as defined in subparagraph (a)(5) of section 102 of the New York Not-For-Profit Corporation Law and is a Type C corporation under section 201 of the NPCL.

18.    The Debtor is organized and operated exclusively for charitable purposes described in section 501(c)(4) of Title 26 of the United States Code that qualify for exemption from federal income taxation under section 501(a) of Title 26 of the United States Code.

19.    The charitable objective to be achieved by formation of the Debtor was, and remains, to provide assistance in the improvement of the environment and quality of life of citizens in deteriorated urban areas.

**RELIEF REQUESTED**

20.    By this Motion, the Debtor seeks (a) the entry of the Bid Procedures Order, substantially in the form annexed hereto as **Exhibit A**:  (i) approving the Bid Procedures; (ii) approving stalking horse protections; (iii) scheduling the Auction and Sale Hearing and establishing related deadlines; (iv) approving the form and manner of notice of the Bid Procedures, the Auction, the Sale Hearing, and the potential assumption, assignment, and sale of executory contracts and unexpired leases and related cure amounts, if any; and (b) second, the entry of an order (the "**Sale Order**") (i) authorizing the sale of the Property free and clear of liens, claims, encumbrances, and interests, pursuant to the Contract; (ii) authorizing and approving the Contract; (iii) approving the assumption, assignment, and sale of various executory contracts and unexpired leases related thereto; (iv) providing for the payment of net

5

proceeds from the sale of the Property to 124 NY in an amount sufficient to satisfy the 124 NY Allowed Secured Claim in full; and (v) granting related relief.

21.     In addition and in connection with the sale of the Property, the Debtor may seek to assume, assign, and/or sell to the ultimate purchaser of the Property certain executory contracts and unexpired leases (the "**Leases**").

## BID PROCEDURES AND PROPERTY TO BE SOLD

22.     The Debtor is proposing to sell the Property and assigning contracts and leases pursuant to the terms of the Contract.  As a result, the Debtor proposes the Bid Procedures, which are attached to the proposed Bid Procedures Order as Exhibit 1 and which are incorporated herein by reference, in an attempt to maximize the benefit to the Debtor's estate, creditors, and other interested parties.

23.     The sale process contemplates that bidders conduct their due diligence prior to making bids for the Property and that Qualified Bids will not contain any material due diligence or financing contingencies.[3]  Qualified Bidders may examine or inspect the Property prior to the Auction or waive such right.  The Bid Procedures contemplate an Auction process pursuant to which bids will be subject to higher or better offers.  As described more fully in the Bid Procedures, only Qualified Bidders who timely submit Qualified Bids will be eligible to participate in the Auction.  The Debtor hereby highlights the pertinent provisions of the proposed Bid Procedures.  Specifically, the Bid Procedures provide, in relevant part, as follows:[4]

---

[3]     Due diligence requests should be directed to Keen-Summit Capital Partners LLC, Attn: Harold Bordwin, 555 Madison Ave., 5th Floor, New York, New York 10022; hbordwin@keen-summit.com.  Each bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

[4]     The following description of the proposed Bid Procedures is a summary of the terms set forth in the Bid Procedures annexed as Exhibit 1 to the Bid Procedures Order.  Capitalized terms utilized but not defined in this summary of the Bid Procedures shall have the meanings ascribed to such terms in the Bid Procedures.

a. <u>Prequalification</u>. To participate in the bidding process or otherwise be considered for any purpose hereunder, any entity or person interested in the acquisition of Property (a "**Bidder**") must deliver, on or before June 6, 2018, evidence of the Bidder's ability to consummate the transaction to the Debtor's real estate advisor Keen-Summit Capital Partners LLC, Attn: Harold Bordwin, 555 Madison Ave., 5th Floor, New York, New York 10022; hbordwin@keen-summit.com.

b. "<u>Qualified Bidder</u>". A "**Qualified Bidder**" is a bidder whose financial or other information demonstrate the financial capability and sophistication to consummate and perform obligations in connection with the sale and which the Debtor determines is reasonably likely to make a bona fide offer and would be able to consummate a proposed sale if selected as the Successful Bidder. A bid received from a Qualified Bidder that meets the requirements set forth herein will be considered a "**Qualified Bid**" if the Debtor (in its discretion, and upon consultation with 124 NY) believes that such bid would be consummated if selected as a Successful Bid.

c. <u>Bid Deadline</u>. **June 6, 2018.** Prior to the Bid Deadline, a Qualified Bidder that desires to make a bid for the Property shall deliver written copies of its bid via mail to: (i) the Debtor's real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin, 555 Madison Ave., 5th Floor, New York, New York 10022; hbordwin@keen-summit.com; (ii) counsel for the Debtor, Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn: Allen G. Kadish, akadish@archerlaw.com; and (iii) counsel for 124 NY, Stagg, Terenzi, Confusione & Wabnik, LLP, 401 Franklin Avenue, Suite 300, Garden City, New York 11530, Attn: Ronald M. Terenzi, rterenzi@stcwlaw.com. The Debtor may extend the Bid Deadline at its sole discretion after consultation with 124 NY.

d. <u>Submission of Bids</u>. A bid must be a written irrevocable offer from a Qualified Bidder and must (i) include the Deposit and each of the Required Bid Documents, executed and in form and substance acceptable to the Seller; (ii) be a good faith, bona fide, offer to purchase the Property; (iii) not be contingent; (iv) be actually received by the Bid Deadline; (v) demonstrate to the Seller the Bidder's ability to consummate promptly the purchase of the Property; and (vi) be irrevocable during the Irrevocability Period.

e. <u>Stalking Horse</u>. The Debtor may enter into an agreement for the Sale with a Potential Bidder (the "**Stalking Horse Bidder**") prior to the Auction, upon consultation with 124 NY. A party shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a Contract by the Bid Deadline, and (ii) it tenders the Qualified Bid. In the event that the Seller selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be

deemed to be a Qualified Bidder and to have submitted a Qualified Bid at a fixed amount (the "**Stalking Horse Purchase Price**"). If the Debtor consummates a transaction other than a transaction with the Stalking Horse Bidder, then the Stalking Horse Bidder shall be entitled to a "Break-Up Fee" in an amount of $100,000. In the event of a competitive auction including a Stalking Horse, the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Bid Protections plus $100,000, taking into account the First Bidding Increment as applicable.

f.  <u>Modification of Bidding and Auction Procedures</u>.  The Debtor reserves the right to negotiate any offer made to purchase the Property, including the form of Contract and to determine whether it is beneficial to the estate and the creditors to enter into a stalking-horse agreement for the Property prior to the Auction or to withdraw the Property from the auction and sell it directly without an auction, subject to Court approval.  Upon consultation with 124 NY, the Seller retains the complete discretion in revising these Bid Procedures in accordance with its directive to maximize the value of the sale of the Property.

g.  <u>Backup Bid</u>. In the event of the failure by the Successful Bidder to consummate a sale of the Property, the Back up Bidder shall be deemed the Successful Bidder without further Order of the Court, and shall proceed to Closing no later than thirty (30) days following the Seller's tender of a notice to the Back-up Bidder at the address set forth on the Offer & Bidder Registration Form. The Seller shall be entitled to retain the Deposit (as supplemented) of any Successful Bidder or Back-Up Bidder who fails to close because of a breach or failure by such Successful Bidder and such Deposit shall be deemed forfeited by such defaulting Successful Bidder, shall not be credited against the purchase price for the benefit of a Back-up Bidder (or other purchaser), and Seller specifically reserves the right to seek all available damages from the defaulting Bidder or Back-Up Bidder.

24.  <u>Date and Time of Auction</u>. If the Debtor receives more than one Qualified Bid (including the bid of a Stalking Horse Bidder if one is selected) from Qualified Bidders by the Bid Deadline, the Auction will take place on **June 11, 2018 at 11:00 A.M.** at the offices of Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, or such other time or place as the Debtor may provide so long as such change is communicated reasonably in advance by the Debtor to all Qualified Bidders, and 124 NY.  Keen shall direct and preside over the

Auction at the direction of the Debtor, in consultation with its advisors, and 124 NY.  If only one

Qualified Bid (including the bid of a Stalking Horse Bidder if one is selected) is received by the

Bid Deadline, the Auction may be cancelled and that Qualified Bid, if it is otherwise accepted by

the Debtor, after consultation with 124 NY, may be deemed the Successful Bid for the Property

identified in the Contract, and the Debtor will seek authority from the Court to consummate the

Sale contemplated by the Qualified Bid.

25.    The Debtor requests that the Sale Hearing be held on **June 13, 2018** before the

Honorable Nancy H. Lord, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3577,

Brooklyn, New York 11201-1800.  Each of the Successful Bidder and Back-up Bidder will be

required to produce a competent witness at the Sale Hearing to provide testimony, if necessary,

to establish adequate assurance of future performance by each such bidder under the unexpired

leases and executory contracts to be assigned to such bidder.

26.    The Bid Procedures also provide that the Debtor reserves the right to hold the

Deposit of the Backup Bidder until expiration of the Irrevocability Period.  Debtor shall return

the Deposits of all Bidders other than the Successful Bidder and the Back-up Bidder within five

(5) business days of the consummation of the Sale.

## STALKING HORSE PROTECTIONS

27.    The Debtor does not currently have an established bidder for the Property.

However, the Debtor anticipates that it may become necessary to grant "stalking horse"

protections as the Debtor moves forward with the marketing process related to the sale.

28.    To induce potential bidders to expend the time, energy, and resources necessary to

submit an offer, the Debtor seeks approval of certain bidding protections in the event that the

Debtor enters into an agreement for the sale of the Property with a Potential Bidder (such bidder, the "**Stalking Horse Bidder**") prior to the Auction.  To avoid compromising the sale timelines mandated by the Court, the Debtor seeks to establish the following procedures for selecting a Stalking Horse Bidder and seek approval to make the following protections available to the Stalking Horse Bidder without further order from the Court:

    a. <u>Selection of a Stalking Horse</u>.  The Debtor may enter into an agreement for the Sale with a Potential Bidder (the "**Stalking Horse Bidder**") prior to the Auction, upon consultation with 124 NY.  A party shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a Contract by the Bid Deadline, and (ii) it tenders the Qualified Bid.  In the event that the Seller selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid at a fixed amount (the "Stalking Horse Purchase Price").

    b. <u>Bid Protections</u>.  If the Debtor consummates a transaction other than a transaction with the Stalking Horse Bidder, then the Stalking Horse Bidder shall be entitled to a "Break-Up Fee" in an amount of $100,000.  In the event of a competitive auction including a Stalking Horse, the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Bid Protections plus $100,000, taking into account the First Bidding Increment as applicable.

## <u>EXTRAORDINARY PROVISIONS</u>

29.    Pursuant to the Court's Sale Guidelines for the conduct of Auction sales, adopted by Administrative Order 557, the Debtor is required to highlight any "extraordinary provisions" of the proposed sale process.  The extraordinary provisions of the proposed Bid Procedures are as follows:

    a. <u>Use of Proceeds</u>.  The Debtor contemplates that, in addition to satisfying the 124 NY Allowed Secured Claim, the sale proceeds will be used to fund a plan of reorganization and pay other claims, including administrative, priority and unsecured claims.

    b. <u>Waiver of 14-Day Automatic Stay of Bankruptcy Rules 6004(h) and 6006(d)</u>. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to

10

assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." To permit the Debtor to close the sale of the Property expeditiously and in compliance with the requests of this Court, the Debtor requests that the Court waive the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d), thereby making the Sale Order immediately effective.

c.  <u>New York Attorney General Approval</u>.  Approval by the New York Attorney General is not required for the sale of the Property. The Debtor is organized under section 501(c)(4) of Title 26 of the United States Code and does not have any regulatory agreement with the state. The sole member of the Debtor is organized under section 501(c)(3) of Title 26 of the United States Code but the sale of the Property would not constitute a sale of substantially all of the sole members assets.

## **BASIS FOR RELIEF**

A.    <u>Justification for Sale of the Property</u>

30.    The decision to sell the Property is left to the sound business judgment of the Debtor.  Courts should permit a sale where the debtor has articulated a sound business justification for selling such property outside of the ordinary course of business.  *See, e.g.*, *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re CPJFK, LLC*, 496 B.R. 290 (Bankr. E.D.N.Y., 2011); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Delphi Corp.*, No. 05–44481(RDD), 2009 WL 2482146, at *6 (Bankr. S.D.N.Y. July 20, 2009) ("Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the sale under . . . section 363(b) and (f) of the Bankruptcy Code").  Here, the sale has been directed by the Court.[5]

31.    Courts look to various factors to determine whether a sound business justification exists, including: (i) whether a sound business reason exists for the proposed transaction; (ii)

---

[5]   The Debtor is proceeding both towards confirmation of a plan, and, alternatively, with the sale.

whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *Lionel Corp.*, 722 F. 2d at 1071.

32.    Here, there is ample business justification to authorize the sale of the Property to the Successful Bidder (or Back-Up Bidder) on substantially the terms set forth in the Contract. The Debtor is required by this Court to pursue a sale of the Property.  The Debtor believes that the Bid Procedures and the Auction will generate maximum interest and bidding under the circumstances and that the bidding process will yield the highest and best bids for the Property. Accordingly, the relief sought by this Motion is not only reasonable, but also necessary to preserve and maximize the value of the Debtor's estate for the benefit of their stakeholders.

33.    The notices described herein and the Bid Procedures are designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Property.  Moreover, the Bid Procedures are designed to maximize the value received for the Property.  The process proposed by the Debtor allows for a timely auction process, while providing bidders with sufficient time and information to submit a timely bid.  The Bid Procedures are designed to ensure that the Property will be sold for the highest or otherwise best possible purchase price under the circumstances.  Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Property will be fair and reasonable.

34.    Finally, it is appropriate for the Court to authorize the payment of net sale proceeds to 124 NY in an amount sufficient to fully satisfy the 124 NY Allowed Secured Claim assuming a sale sufficient to cover the 124 NY Allowed Secured Claim, the liens required to be paid to close, and the administrative expenses of closing.  The relief requested by the Motion, if

granted, will allow the Debtor to perform its obligations to 124 NY, and it is appropriate for the order approving the sale to, authorize the Debtor to satisfy the 124 NY Allowed Secured Claim.

35.    The Debtor submits that the proposed sale constitutes or will constitute the best sale transaction for the Property.  Thus, the Debtor's proposed sale represents a sound exercise of its reasonable business judgment.

B.    Cause Exists to Allow the Debtor to Select a
      Stalking Horse Bidder and to Approve Bid Protections

36.    To induce Qualified Bidders to expend the time, energy, and resources to submit an offer, and to ensure compliance with its obligations set forth by the Court, the Debtor should be authorized to select a Stalking Horse Bidder and offer certain Bid Protections, consisting of the Break-up Fee, which shall be deemed allowed superpriority administrative expense claims under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code. Without the ability to select a Stalking Horse Bidder and offer the Bid Protections, the Debtor will face greater uncertainty with respect to the Auction, to the potential detriment of the Debtor, its estate, creditors and other stakeholders.

37.    Approval of the Bid Protections is governed by standards for determining the appropriateness of bidding incentives in the bankruptcy context.   In considering the appropriateness of a break-up fee, courts consider whether the parties dealt at arm's length, whether the fee hampers bidding, and whether the amount of the fee is reasonable relative to the proposed purchase price. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96

B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (holding that the business judgment standard protects break-up fees and other contractual provisions negotiated in good faith).

38.    Although courts do not closely examine whether a debtor's decision to consent to a break-up fee is appropriate, courts do examine whether the fee will discourage bidding and whether the fee is reasonable relative to the purchase price. *See Integrated*, 147 B.R. at 657. With regard to whether the break-up fee will discourage bidding, courts consider whether the debtor's consent to a break-up fee to secure a stalking horse bidder served "(1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow, or (3) to attract additional bidders." *Id.* at 662. As for the size of the fee in relation to the purchase price, the fee "should be reasonably related to the risk, effort, and expenses of the prospective purchaser." *Id.* at 662. In the Second Circuit, break-up fees in the range of 2-4% are generally considered to be reasonable and appropriate. *Id.* at 662. (1.6% reasonable); *see In re Ray Realty Fulton, Inc.*, No. 09-41225, 2009 WL 2600760, at *1; 2009 Bankr. LEXIS 2415, at *3 (Bankr. E.D.N.Y. Aug. 21, 2009) (3.5% percent reasonable). The Debtor submits that the Break-up Fee will serve to secure a potential stalking horse bidder, which, in turn, will attract other potential bidders to the Debtor's Auction. Finally, the Break-Up Fee is less than 1.5% of the minimum anticipated purchase price, within the range of break-up fees found to be appropriate in the Second Circuit.

C.    The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

39.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances, or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, encumbrance, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on

the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, encumbrance, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  *See* 11 U.S.C. § 363(f); *see also In re Smart World Tech., LLC*, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests…. It thus allows [a purchaser] to acquire assets [from a debtor] without any accompanying liabilities.")  Because the Debtor expects that it will satisfy the second and fifth requirements of section 363(f) in this case, if not others as well, approving the sale of the Property free and clear of all adverse interests is warranted.

40.     The Debtor also submits that it is appropriate to sell the Property free and clear of successor liability relating to the Debtor's business.  Such a provision ensures that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtor.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free from successor liability relating to the debtor's business.  *See, e.g., MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds is consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[S]uccessor or transferee liability claims against [the purchaser] are encompassed by section 363(f) and are therefore extinguished by the Sale Transaction"), *aff'd*, 567 F.3d 108 (2d Cir. 2009).

41.     The Debtor reserves the rights to make additional written and/or oral arguments at or before the Sale Hearing concerning its request to sell the Property free and clear of all interests in response to any objections thereto.

42.     The sale of the Property satisfies the requirements of section 363(f).

15

D.     The Sale Is Proposed in "Good Faith" Under Section 363(m) of the Bankruptcy Code

43.     The Debtor requests that the Court find that the Successful Bidder (or Back-up Bidder) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code.

44.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

45.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

46.     As required by section 363(m) of the Bankruptcy Code, the Bid Procedures have been proposed in good faith and provide that both the Debtor and the potential purchasers must act in good faith in negotiating the sale and the assignment of the designated Contracts and Leases.

47.     To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989);. Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating

on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus.,* 572 F.2d at 1998).

48.     The Second Circuit has indicated that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC, v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 276, (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" (quotation marks and citation omitted)); *see also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

49.     Here, the sale of the Property and the assumption, assignment, and/or sale of these Leases designated by the purchaser will be in good faith.  There is no evidence of fraud or collusion in the Debtor's marketing process.  To the contrary, as discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, the Contract will be the culmination of a solicitation and negotiation process in which all parties are expected to be represented by counsel.  All negotiations have been, and will continue to be, conducted on an arm's-length, good-faith basis, and the Bid Procedures are designed to ensure that no party is able to exert undue influence over the process.  Under the circumstances, the Successful Bidder (or Back-up Bidder) should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.  Furthermore, the Bid Procedures are designed to prevent the Debtor or the Successful Bidder (or Back-up Bidder) from engaging in any conduct that would cause or permit the Contract, or the sale of the Property to the Successful Bidder (or

Back-up Bidder) pursuant thereto and hereto, to be avoided under section 363(n) of the Bankruptcy Code.

50.    All parties in interest will receive notice of the sale and will be provided with an opportunity to be heard.   Additionally, all counterparties to the Contracts and Leases will be provided notice of the potential assumption, assignment and/or sale of their agreements and an opportunity to be heard.  The Debtor submits that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under sections 363(b) and 365 of the Bankruptcy Code.

E.    The Proposed Manner and Form of Notice is Fair and Adequate

51.    The Debtor requests that the Court approve the form of notice to be provided to various parties in interest to adequately inform such parties of the proposed sale and to advise such parties who may be interested in participating in the Auction of the qualifications for becoming a Qualified Bidder and the Bidding Procedures relating to the Auction (the "**Sale Notice**").  A copy of the Sale Notice is attached as Exhibit 2 to the Bid Procedures Order.

52.    The Debtor requests that the Sale Hearing be scheduled for **June 13, 2018 at 11:00 A.M.**  Following entry of the Bid Procedures Order, the Debtor, in compliance with Bankruptcy Rule 2002(a)(2) will serve a copy of the Bid Procedures Order and the Sale Notice upon the following parties:  (i) the United States Trustee; (ii) 124 NY, by its counsel; (iii) all parties known by the Debtor to assert liens, claims, rights, interests or encumbrances of record in the Property; (v) all parties having filed a notice of appearance in the Debtor's chapter 11 case; (vi) all the Debtor's known creditors; (vii) all applicable regulatory governmental agencies, federal and state taxing authorities; and (viii) all parties who are known to claim interests in any of the Debtor's contracts and leases (collectively, the "**Notice Parties**").

53.    The Debtor proposes to serve the Sale Notice within two (2) business days of entry of the Bid Procedures Order, by first-class mail, postage prepaid on the Notice Parties.  The Sale Notice will advise interested parties that written offers for the Property must be timely submitted in conformity with the Bid Procedures Order and provides that any party that has not received a copy of this Motion or the Bid Procedures Order that wishes to obtain a copy, including all exhibits thereto, may make such request in writing to counsel for the Debtor.

54.    Pursuant to Bankruptcy Rules 2002(a) and (c), the Debtor is required to notify creditors of the proposed sale of the Property, including a disclosure of the time and place of any auction, the terms and conditions of the proposed sale, and the deadline for filing objections, if any.    The Debtor submits that the notice procedures described above comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale of the Assets, the Bid Procedures, the Auction, and the Sale Hearing to the Debtor's creditors and all other parties in interest that are entitled to notice, as well as those parties who have expressed an interest in acquiring the Property.    Accordingly, the Debtor respectfully requests that the Court approve the notice procedures set forth in this Motion, including the form and manner of service of the Auction and Sale Notice, and hold that no other or further notice of the Sale, the Sale Procedures, the Auction, or the Sale Hearing is required.

F.    Assumption and Assignment of Contracts and Leases

55.    In addition, in connection with the proposed assumption, assignment, and/or sale of the contracts and leases, the Debtor will prepare a schedule of the executory contracts and leases that it believes it may assume, assign, and/or sell, as well as the amounts that the Debtor believes are necessary to cure any defaults under such agreements pursuant to section 365 of the Bankruptcy Code, if any (the "**Cure Amounts**").  Within ten (10) business days of the entry of the Bid Procedures Order, the Debtor will serve the Cure Notice, substantially in the form

annexed to the Bid Procedures Order as <u>Exhibit 3</u>, on each of the counterparties to the contracts and leases, identifying the executory contracts and leases to be assigned and the proposed Cure Amounts.

56.     The Debtor proposes that if any counterparties to an executory contract or lease wish to object (a "**<u>Lease Objection</u>**") to (i) the ability to assign such executory contract or lease or (ii) the proposed Cure Amount, such Lease Objection must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court on or before **5:00 P.M. on June 12, 2018**, or such later date and time as the Debtor may agree (the "**<u>Lease Objection Deadline</u>**"); and (d) be served by first class mail, overnight mail, courier or email, so as to be received on or before the Contract Objection Deadline by: (i) counsel to the Debtor, Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn:  Allen G. Kadish; (ii) counsel for 124 NY, Stagg, Terenzi, Confusione & Wabnik, LLP, 401 Franklin Avenue, Suite 300, Garden City, New York 11530, Attn: Ronald M. Terenzi; and (iii) the Office of the United States Trustee, Attn: Marylou Martin, 201 Varick Street, Suite 1006, New York, New York 10014.

57.     If an executory contract or lease is included in any Successful Bid or Next Highest Bid, the Debtor will, within one (1) day after the conclusion of the Auction, file with the Court a notice identifying the Successful Bidder and any Back-up Bidder and the executory contracts and leases that such Successful Bidder and any Back-up Bidder will seek to take assignment of from the Debtor upon the closing of the Sale.  The Debtor shall serve such notice by hand, overnight courier, email or facsimile to the non-Debtor parties to such executory contract or lease.

58. Counterparties to the contracts and leases to be assumed by the Successful Bidder and any Back-up Bidder may raise objections to the adequate assurance of future performance by such Successful Bidder and any Back-up Bidder at the Sale Hearing.

G.     The Debtor May Assume and Assign Executory Contracts and Leases

59. Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of this Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. The standard applied in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11 U.S.C. § 1113).

60. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp.* (*In re Sanshoe Worldwide Corp.*), 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), *aff'd*, 993 F.2d 300 (2d Cir. 1993); *Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance was present when the prospective assignee of a lease from the debtors had the financial resources and had expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid").

21

61.     The Successful Bidder (or the Back-up Bidder) may desire to take assignment of certain executory contracts and leases.  To the extent contracts and leases are identified for assumption, assignment, and/or sale by the Successful Bidder (or the Back-up Bidder), the Debtor will cause all cure amounts to be paid at consummation of the sale and believes that it can and will demonstrate that all requirements for assumption and/or assignment of such contracts and leases will be satisfied prior to or at the Sale Hearing.  The Debtor, as required by the Bid Procedures, will evaluate the financial wherewithal of all potential bidders before qualifying such bidders to bid for the Property.

62.     Further, for the reasons stated throughout this Motion, the Debtor, in exercising its sound business judgment, believes that selling the Property and assuming and assigning to the Successful Bidder (or the Back-up Bidder) the selected contracts and leases will be in the best interests of its estate.  With respect to the leases to space in the Building, the Debtor is the lessor.

63.     In addition, counterparties to the executory contracts and leases selected by the Successful Bidder and/or Back-up Bidder will have an opportunity to object to the provision of adequate assurance of future performance up until the Sale Hearing.  As set forth above, the Debtor will provide all parties to the contracts and leases an opportunity to be heard.  Parties to the contracts and leases will be given an opportunity to assert objections to the assumption, assignment, and/or sale, including as to the Cure Amounts and whether the Successful Bidder (or the Back-up Bidder) can provide adequate assurance of future performance.

64.     Thus, the Debtor requests that the assumption, assignment and/or sale of the contracts and leases that are designated for assumption, assignment and/or sale by the Successful Bidder (or Back-up Bidder) be approved.

## CARVE OUT

65.    The Debtor hereby requests a "carve out" pursuant to section 506(c) of the Bankruptcy Code to protect the fees and expenses of its counsel and any other chapter 11 professional herein as may be allowed by Court order, senior to the liens, claims and encumbrances of the secured creditors herein holding a priority senior to that of the professionals pursuant to section 503 of the Bankruptcy Code. 124 NY has not agreed to a "carve out" for administrative fees and expenses applicable to professionals in this chapter 11 case including, in the event of a shortfall in a sale, to the real estate advisor.

## NO PRIOR REQUEST

66.    No prior request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

67.    The Debtor will provide a copy of this Motion, with exhibits, to:  (i) the United States Trustee; (ii) 124 NY, by its counsel; (iii) all parties having filed a notice of appearance in the Debtor's chapter 11 case; and (v) all parties known by the Debtor to assert liens, claims, rights, interests or encumbrances of record in the Property.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests (a) entry of the Bid Procedures Order, substantially in the form attached hereto as **Exhibit A**, (b) entry of Sale Order substantially in the form to be filed prior to the Sale Hearing, and (c) such other and further relief as the Court deems just and proper.

Dated:  New York, New York
      May 3, 2018

ARCHER & GREINER, P.C.

By:_____
     Allen G. Kadish
     Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Fax:  (212) 682-4942
Email: akadish@archerlaw.com
      hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

## <u>INDEX TO EXHIBITS</u>

A – Proposed Bid Procedures Order

B – 124 NY Payoff Statement as of Petition Date

**EXHIBIT A**

**Proposed Bid Procedures Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 11

VORAS ENTERPRISE INC.,                                    Case No. 1-17-45570 (NHL)

        Debtor.

-------------------------------------------------------------x

**ORDER (I) APPROVING SALE PROCEDURES;**
**(II) APPROVING STALKING HORSE PROTECTIONS; (III) SCHEDULING**
**AUCTION AND HEARING TO CONSIDER SALE OF THE PROPERTY;**
**(IV) APPROVING FORM AND MANNER OF NOTICE OF SALE PROCEDURES**
**AND NOTICE OF POTENTIAL ASSUMPTION, ASSIGNMENT, AND/OR**
**SALE OF CONTRACTS AND LEASES; AND (V) GRANTING RELATED RELIEF**

      Upon the Motion dated _____ __, 2018 (the "**Motion**") of Voras Enterprise Inc.,

debtor and debtor-in-possession (the "**Debtor**") for entry of Orders (A) (i) approving sale and

bidding procedures in the form annexed hereto as Exhibit 1 ("**Bid Procedures**") in connection

with the proposed sale of the Debtor's property, a five-story commercial office building, located

at 601-609 Throop Avenue, Brooklyn, New York 11216 (the "**Property**"), (ii) approving stalking

horse protections; (iii) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**");

(iv) approving the form of notice of the Auction and Sale Hearing, substantially in the form

annexed hereto as Exhibit 2 (the "**Sale Notice**") and the form and manner of notice of the

assumption, assignment, and/or sale of executory contracts and unexpired leases and related cure

amounts, if any, substantially in the form annexed hereto as Exhibit 3 (the "**Cure Notice**"); and

(B) (i) authorizing the sale of the Property free and clear of liens, claims, encumbrances, and other

interests pursuant to the terms of the contract (the "**Contract**") substantially in the form to be filed

with the Court; (ii) authorizing and approving the Purchase Agreement; (iii) approving the

assumption, assignment, and/or sale of executory contracts and unexpired leases, as necessary; (iv)

providing for the payment of net proceeds from the sale of the Property to 124 NY Inc. ("**124 NY**"), the Debtor's senior secured mortgage lender, to the extent necessary to fully satisfy the 124 NY Allowed Secured Claim[1]; and (v) granting related relief; and the Court having determined that the relief provided herein is in the best interest of the Debtor, its estate, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of the Debtor's case; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**FOUND AND DETERMINED that:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      This Court has jurisdiction over the Motion and the transactions contemplated by the Motion and the Contract pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is core pursuant to 28 U.S.C. § 157(b)(2).

C.      Venue in this district is proper under 28 U.S.C. § 1408.

D.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the proposed notice of the Bid Procedures and the Sale.[2]  A reasonable opportunity to object and be heard regarding the relief provided herein has been afforded to parties in interest.

E.      The Debtor's proposed notice of the Bid Procedures, Auction and Sale Hearing (including the proposed publication thereof) is appropriate and reasonably calculated to

---

[1]  Capitalized terms not defined herein shall have the meaning set forth in the Motion.
[2]  To the extent notice is required to be shortened in order to accomplish the entry of this Order, it is so shortened.

provide all interested parties with timely and proper notice of the Auction and the Sale, as well as the Bid Procedures to be employed in connection therewith.

F.    The procedures for selecting a Stalking Horse Bidder (defined below), along with the Break-Up Fee (together, the "**Bid Protections**"), are reasonable and necessary under the circumstances.  The Bid Protections (i) shall, if triggered, be deemed an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of sections 503 and 507(b) of the Bankruptcy Code; (ii) are of substantial benefit to the Debtor's estate; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and the efforts that will be expended by a Stalking Horse Bidder; (iv) were negotiated at arms' length and in good faith by the Debtor and 124 NY; and (v) are a necessary incentive for a Stalking Horse Bidder to be willing to enter into the Purchase Agreement. The Bid Protections are commensurate with the real and substantial post-petition benefits to be conferred upon the Debtor's estate by a Stalking Horse Bidder and constitute actual and necessary costs and expenses incurred by the Debtor in preserving the value of its estate within the meaning of section 503(b) of the Bankruptcy Code.

G.    The Debtor's proposed Notice of Cure Amounts is appropriate and reasonably calculated to provide all parties to the Debtor's executory contracts and leases with timely and proper notice of the proposed Cure Amounts, the Contract Objection Deadline, the Adequate Assurance Objection Deadline, and Sale Objection Deadline.

H.    The entry of this Bid Procedures Order is in the best interests of the Debtor, its estate, creditors and other parties in interest.

I.    The Bid Procedures are fair, reasonable, and appropriate under the circumstances and are reasonably designed to maximize the value to be· achieved for the Property.

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.  The Motion is GRANTED, as set forth herein.

2.  All objections to the Motion pertaining to approval of the Bid Procedures or entry of this Bid Procedures Order, including the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits; any party's rights to object to the Sale, the assumption, assignment, and/or sale of any of the Debtor's executory contracts or leases, any proposed Cure Amount, and/or the provision of adequate assurance of future performance under such Contract or Lease are expressly reserved, subject to the Bid Procedures.

3.  The Bid Procedures, in the form attached hereto as **<u>Exhibit 1</u>**, are incorporated herein and approved and shall apply to the Sale.

4.  The Debtor may make non-material changes to the Bid Procedures that it reasonably deems necessary after the entry of this Bid Procedures Order upon consultation with 124 NY.

5.  The Debtor is authorized to enter into the Contract for the sale of the Property prior to the Auction and is authorized, after consultation with 124 NY, to designate a party with whom the Debtor enters into an agreement for the sale of the Assets as a "Stalking Horse Bidder."  A party shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a signed Contract (which·may be a modified version of the Contract) by the Bid Deadline and (ii) it tenders the Deposit.

6.  In the event that the Debtor selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid.

7.    The Stalking Horse Bidder shall be entitled to the following protections (the "**Bid Protections**"): (i) a Break-Up Fee in an amount of $100,000.  The Debtor is hereby authorized to pay any and all amounts owing to a Stalking Horse Bidder on account of the Bid Protections out of proceeds of the Sale without further action or order by the Court.

8.    The Bid Protections shall be allowed superpriority administrative expense claims in the Debtor's chapter 11 case pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

9.    124 NY is deemed a Qualified Bidder in the amount of its allowed secured claim, and shall file its payoff statement as on June 15, 2018 evidencing the same (subject to this Court's resolution of any disputes).

10.    The Debtor is authorized, subject to all parties' rights to object to any proposed sale of the Property and as set forth in this Bid Procedures Order, to conduct the Auction and otherwise act in accordance with the Bid Procedures.

11.    In the event that the Debtor determines that a refinancing of 124 NY's indebtedness in lieu of a Sale is in the best interests of the Debtor's estate and creditors, the Debtor shall file with this Court for approval of such refinancing, whether independently or as part of a chapter 11 plan.

12.    The Sale Hearing shall be held before this Court on **June 13, 2018 at __:00 _.m.,** or as soon thereafter as counsel and interested parties may be heard.  The Sale Hearing may be adjourned from time to time or canceled without further notice to creditors or other parties in interest (other than 124 NY) other than by announcement at the Sale Hearing or in an agenda for or notice of the Sale Hearing filed with the Court prior to the Sale Hearing.

13.    The Sale Notice, substantially in the form annexed hereto as **Exhibit 2**, is approved.

14.    On or before the second business day after the entry of this Bid Procedures Order, the Debtor shall serve by first class mail, postage prepaid, copies of this Bid Procedures Order and the Sale Notice, substantially in the form attached hereto as **Exhibit 2**, upon:  (i) the United States Trustee; (ii) 124 NY, by its counsel; (iii) all parties known by the Debtor to assert liens, claims, rights, interests or encumbrances of record in the Property; (iv) all parties having filed a notice of appearance in the Debtor's chapter 11 case; (v) all the Debtor's known creditors; (vi) all applicable regulatory governmental agencies, federal and state taxing authorities; (vii) all parties who are known to claim interests in any of the Debtor's executory contracts or leases; and (viii) all parties known to the Debtor who have expressed an interests in purchasing the Property (collectively, the "**Notice Parties**").  Such notice is deemed to satisfy Bankruptcy Rule 2002, and no other or further notice is required.

15.    The Cure Notice, substantially in the form annexed hereto as Exhibit 3, is approved.

16.    On or before the second business day after the entry of this Bid Procedures Order, the Debtor shall serve by hand, overnight courier on each non-Debtor party to an executory contract or lease a Cure Notice (i) identifying any contracts or leases to be assigned, (ii) the Debtor's proposed monetary cure amount through the date of the Sale Hearing (the "**Cure Amount**"), and (iii) the deadline to object to the proposed assumption, assignment, and/or sale of each contract or lease. Such notice is deemed to satisfy Bankruptcy Rule 2002, and no other or further notice is required.

17.     Objections, if any, to (i) the ability to assign such contract or lease, or (ii) the proposed Cure Amount (in either case, a "**Lease Objection**") must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court **on June __, 2018**, or such later date and time as to which the Debtor may agree (the "**Lease Objection Deadline**"); and (d) be served by first class mail, overnight mail, courier or email, so as to be received on or before the Lease Objection Deadline by:  (i) counsel to the Debtor, Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn:  Allen G. Kadish; (ii) counsel for 124 NY, Stagg, Terenzi, Confusione & Wabnik, LLP, 401 Franklin Avenue, Suite 300, Garden City, New York 11530, Attn: Ronald M. Terenzi; and (iii) the Office of the United States Trustee, Attn: Marylou Martin, 201 Varick Street, Suite 1006, New York, New York 10014 (collectively, the "**Objection Notice Parties**").

18.     Except for an Adequate Assurance Objection, which may be made at the Sale Hearing, unless the non-Debtor party to a contract and/or lease files a Lease Objection on or before the Lease Objection Deadline, such non-Debtor party shall be forever barred from (i) contesting the Debtor's ability to assume, assign, and/or sell such contract and/or lease and (ii) objecting to the Cure Amount or asserting any additional cure or other claim amounts with respect to such contract and lease, and the Cure Amount set forth in the Cure Notice shall be the only monetary obligations due with respect to such contract or lease.

19.     If a contract or lease is included in any Successful Bid or Next Highest Bid, the Debtor shall, within one business day after the conclusion of the Auction, file with the Court a notice identifying the highest or otherwise best bid and the next highest or otherwise best bid and the Contracts and Leases that such Successful Bidder and any Next Highest Bidder will seek to take assignment of from the Debtor upon the closing of the Sale.  The Debtor shall serve such

7

notice by hand, overnight courier, email or facsimile to the non-Debtor parties to such contracts and leases.

20.    Counterparties to the contracts or leases to be assumed by the Successful Bidder and any Next Highest Bidder may raise objections to the adequate assurance of future performance by such Successful Bidder and any Next Highest Bidder at the Sale Hearing (the "**Adequate Assurance Objection Deadline**").

21.    Any and all objections to the sale of the Property (a "**Sale Objection**"), other than a Contract Objection, which shall be subject to the Contract Objection Deadline, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Court with a copy to the Chambers of the Honorable Nancy H. Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800; and (d) be served by first class mail, email, overnight mail or courier so as to be received by the Objection Notice Parties no later than **June __, 2018** (the "**Sale Objection Deadline**").

22.    Failure to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to be "consent" for purposes of section 363(f) of the Bankruptcy Code or otherwise.

23.    Any Sale Objection or Contract Objection that has not been resolved shall be addressed by the Court at the Sale Hearing.

24.    The Debtor shall have the right as it may reasonably determine to be in the best interests of its estate (in its discretion, and upon consultation with 124 NY) to (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or

otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bid Procedures, the Bid Procedures Order or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) waive terms and conditions set forth herein with respect to all Potential Bidders; (vi) impose additional terms and conditions with respect to all Potential Bidders; (vii) extend the deadlines set forth herein; (viii) modify the Bid Procedures as it may determine to be in the best interests of its estate; and (ix) terminate the Auction and/or reject all bids in the event that the Debtor elects to consummate a refinancing in place of the sale.

25.      Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 (to the extent applicable) or any applicable provisions of the Local Rules, this Bid Procedures Order shall not be stayed for 14 days after the entry hereof but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in such rules is hereby expressly waived and shall not apply.

26.      All persons submitting bids shall be deemed to have submitted to the jurisdiction and final adjudicatory power of this Court with respect to all matters between and among the bidder and the Debtor related to the Auction, the Sale and the terms and conditions of thereof.

27.      This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order.

## **<u>INDEX TO EXHIBITS</u>**

1 – Bid Procedures

2 – Sale Notice

3 – Cure Notice

## Exhibit 1

**Bid Procedures**

## BID PROCEDURES

### Voras Enterprise Inc., Chapter 11 Case No. 17-45570 (NHL)

### <u>GENERAL</u>

## I.    <u>INTRODUCTION</u>

By Motion dated April __, 2018, Voras Enterprise Inc., debtor and debtor-in-possession (the "**Debtor**"), sought approval of, among other things, these procedures ("**Bid Procedures**") through which the Debtor is authorized to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of the Debtor's property, a five-story commercial office building, located at 601-609 Throop Avenue, Brooklyn, New York 11216, Block: 1856 - Lot:1 (the "**Property**"), free and clear of all liens, claims, encumbrances and interests, pursuant to the terms of a form purchase agreement proposed by the Debtor and filed with the Court (the "**Contract**").

On _____ __, 2018, the United States Bankruptcy Court for the Eastern District of New York (the "**Court**") entered an order [Docket No. __] (the "**Bid Procedures Order**"), which, among other things, authorized the Debtor to determine the highest or otherwise best bid or bids for the Property in accordance with these Bid Procedures.  In accordance with the Bid Procedures Order, the Debtor reserves the right, after consultation with 124 NY Inc., its senior secured pre-petition mortgage lender ("**124 NY**") to waive or modify the Bid Procedures to the extent such waiver or modification is in the best interests of the Debtor's estate as determined by the Debtor, in its discretion.

The Debtor will regularly consult with 124 NY regarding all material aspects of the Sale process, both prior to and during the Auction.

## II.    <u>DEFINITIONS</u>

A.    ADVISOR: Keen-Summit Capital Partners LLC.  Information about the Property and about the Auction are available from Advisor.  Advisor can be contacted at:

> Keen-Summit Capital Partners LLC
> 555 Madison Avenue, 5th Floor
> New York, New York 10022
> Attn: Harold Bordwin
> Telephone: (646) 381-9201
> Email: hbordwin@keen-summit.com

With a copy to:

> Keen-Summit Capital Partners LLC
> 1 Huntington Quadrangle, Suite 2C04
> Melville, New York 11747
> Attn: Matthew Bordwin
> Telephone: (646) 381-9202

Email: mbordwin@keen-summit.com

B.    AUCTION: The Debtor, through the services of Advisor, will conduct (pursuant to the terms and conditions of these Bidding Procedures) an auction of the Property on the Auction Date (or on an adjourned date). The Debtor, with consent of 124 NY, reserves the right to use any auction format that it deems in its best interests.

C.    AUCTION DATE: June 11, 2018 at 11:00 am.

D.    AUCTION VENUE: Offices of Seller's Counsel.

E.    BACK-UP BID: The Qualified Bid selected by Seller at the conclusion of the Auction as the second best Bid.

F.    BACK-UP BIDDER: The Bidder who submitted the Back-up Bid.  The Back-up Bidder's Deposit is held pursuant to the provisions below and, in the event that the Successful Bidder fails to close, the Back-up Bidder is obligated to close.

G.    BID: A binding offer to purchase the Property.  All Bids are irrevocable pursuant to the terms set forth below.

H.    BIDDER: A person or entity that submits a Bid.

I.    BID DEADLINE: June 6, 2018.

J.    CLOSING:  The day of the closing of the transactions described herein.

K.    CONTRACT: As in II. A. 2

L.    COURT: United States Bankruptcy Court for the Eastern District of New York.

M.    DATA: Information provided by Seller to Bidders or prospective Bidders subject to the conditions and limitations set forth in these Bidding Procedures.  This information may include title work, surveys, and other data about the Property.

N.    DEPOSIT: As set forth in Section IV below.

O.    FIRST BIDDING INCREMENT: As set forth on **Exhibit C** hereto.

P.    FIRST COMPETITIVE BID REQUIREMENT: As set forth on **Exhibit C** hereto.

Q.    IRREVOCABILITY PERIOD:  That period of time which commences upon each Bidder's submission of a Bid and which concludes at the earlier of (i) the Closing, or (ii) 30 days after the conclusion of the Auction (as it may be adjourned), but in no event later than July 31, 2018.

R.    OFFER & BIDDER REGISTRATION FORM: The form of document attached hereto as **Exhibit A**.

S.    PROPERTY: The property known as 601-609 Throop Avenue, Brooklyn, New York 11216, Block: 1856 - Lot:1.

T.     QUALIFIED BID: A Bid that satisfies the requirements set forth below.

U.     QUALIFIED BIDDER: A Bidder who submits a Qualified Bid or submits a contract otherwise acceptable to the Seller.

V.     REQUIRED BID DOCUMENTS: The Required Bid Documents are those documents that a Bidder is required to submit by the Bid Deadline, as further described below.

W.    SALE HEARING: A hearing in the Court on June 13, 2018 at __:__ _.m., which the Seller will seek an order approving the sale.

X.     SALE ORDER: An order of the Court authorizing a sale of the Property to the Successful Bidder. The order may be pursuant to (i) 11 U.S.C. § 363, and/or (ii) 11 U.S.C. § 1129 pursuant to a Chapter 11 plan, in the discretion of the Seller upon consultation with 124 NY.

Y.     SELLER: Voras Enterprise Inc., debtor and debtor-in-possession.

Z.     SELLER'S COUNSEL:

> Archer & Greiner, P.C.
> 630 Third Avenue
> New York, New York 10017
> Attn: Allen G. Kadish
>      Harrison H.D. Breakstone
> Tel: (212) 682-4940
> Email: akadish@archerlaw.com
>      hbreakstone@archerlaw.com

AA.  SUCCESSFUL BID:  At the conclusion of the Auction, the Qualified Bid selected by the Seller as the winning bid based upon price, financial condition, experience, and such other factors as the Seller may deem relevant, as further detailed below.

BB.  SUCCESSFUL BIDDER: The Bidder who submitted the Successful Bid.

<u>**STEP ONE**</u>

I.    <u>**BID DEADLINE:**</u>                                        **June 6, 2018**

A.     The Seller seeks to solicit bids ("**Bids**") for the sale of the Property. In order to solicit the highest and best offers, the Seller is conducting the Auction herein described. The first step is the submission of binding Bids in the form of the "Required Bid Documents" on or before the Bid Deadline. Seller will review the Required Bid Documents and based upon that review, Seller will identify those Bidders who have submitted "**Qualified Bids**". Only those Bidders who have

         submitted Qualified Bids, if any, will be authorized to participate in the Auction.

B.      You must submit the Required Bid Documents (including the "**Deposit**") so as to be actually received by no later than June 6, 2018 (the "**Bid Deadline**"). The original set of the Required Bid Documents (including the Deposit) must be submitted to the Seller's Counsel. A complete copy of the Required Bid Documents must also be submitted to the Advisor.

C.      Due diligence information can be obtained by contacting Advisor. Seller and Advisor shall not be obligated to furnish any Data after the Bid Deadline or to any party that the Seller determines, in its sole discretion, is not reasonably likely to be a Qualified Bidder.

D.      A non-disclosure agreement may be required by the Seller or the Advisor.

E.      On or before the Bid Deadline, 124 NY  shall file on the docket of the Debtor's Chapter 11 case and provide copies to Seller's Counsel and Advisor (i) a payoff statement as of June 15, 2018 with estimates of any contingent or unliquidated amounts expected to be incurred after the date of the statement (the "**124 NY Payoff Amount**") (subject to resolution of the Court of any disputes), and (ii) a statement of whether it intends to bid at the Auction in which case it shall be deemed a Qualified Bidder to bid the entire amount of the 124 NY Payoff Amount; to the extent it participates in the Auction, it shall be subject to the requirements applicable to a Successful Bidder as set forth herein including for any amounts over the 124 NY Payoff Amount.

F.      In the event of an auction including 124 NY, and unless a Stalking Horse Bidder is designated, 124 NY shall be deemed the opening bidder at the 124 NY Payoff Amount as a Qualified Bid; the first competitive bid shall be no less than the 124 NY Payoff Amount plus the First Bidding Increment.

## II.    <u>REQUIRED BID DOCUMENTS</u>

A .     Unless expressly waived by Seller, in order for a Bidder to become a Qualified Bidder, a Bidder must submit to Seller's Counsel with a copy to Advisor, the following documents which, taken together, constitute the "Required Bid Documents":

    1.    Offer: A written "Offer & Bidder Registration Form" in the form attached hereto as **Exhibit A**. Pursuant to the terms of such form, the offer must expressly state that the Bidder's offer is all cash, on an as-is, where-is basis and irrevocable during the Irrevocability Period.

    2.    Contract: A marked up copy of the Proposed Contract attached hereto as

**Exhibit B**.  The Contract, as tendered, may not contain any contingencies, including, but not limited to, due diligence or financing contingencies. The Contract shall indicate assumption and assignment (or rejection) of executory contracts and leases.

3.    Any Contract shall indicate a Purchase Price of at least the First Competitive Bid Requirement.

4.    Financials:  Written evidence of a commitment for financing or other evidence of immediately available funds demonstrating the ability of Bidder to consummate the transaction.

5.    Other Information:  Any other information that the Seller may reasonably request which would enable Seller to evaluate, among other things, the Bidder's ability to consummate a transaction, the Bidder's legal authority to Bid, and/or the Bidder's ability to fulfill its obligations in connection therewith.

6.    Deposit: A wire transfer, or a cashier's or certified check, for the Deposit in the amount of 5% of the Purchase Price (as defined in the Contract).

7.    Procedures:  Bidder shall agree to be bound by these Bid Procedures by signing the signature block at the end of these Bid Procedures and returning that page among the Required Bid Documents.

## III.    QUALIFIED BIDS

Unless such requirement is waived by the Seller:

A .    ONLY BIDDERS THAT HAVE SUBMITTED QUALIFIED BIDS SHALL BE ELIGIBLE TO PARTICIPATE IN THE AUCTION.

B .    In order for a Bid to be a "Qualified Bid," a Bid shall:

1.    Include the Deposit and each of the Required Bid Documents, executed and in form and substance acceptable to the Seller;

2.    Be a good faith, bona fide, offer to purchase the Property;

3.    Not be contingent;

4.    Be actually received by the Bid Deadline;

5.    Be in the amount of at least the First Competitive Bid Requirement;

6.    Demonstrate to the Seller the Bidder's ability to consummate promptly the purchase of the Property; and

      7.     Be irrevocable during the Irrevocability Period.

C .     Failure of a Bidder to fully, accurately and promptly respond to Seller's requests for additional information may result in a Bid no longer being considered a Qualified Bid.

D .     Following the receipt of Bids, Seller will ascertain, in the exercise of its reasonable business judgment, whether a Bid is a Qualified Bid, taking into account, among other things, the quality of the Required Bid Documents, the Bidder's experience, financial capacity to close and reputation in the marketplace.

E .     By 5:00 p.m. on June 8, 2018, Advisor will notify each Bidder at the email address set forth on the Offer & Bidder Registration Form whether it is determined to be a Qualified Bidder.

F .     An insider, affiliate or other related party of the Seller or 124 NY may not be disqualified as a Qualified Bidder solely because of such status.

## IV.   DEPOSIT REQUIREMENT

A.    Each Bidder shall tender a Deposit with the Required Bid Documents to Seller's Counsel either by wire, or a cashier's or certified check, in the amount of 5% of the Purchase Price (as defined in the Contract). The Successful Bidder will be required to tender additional Deposits, as set forth below.

B.    The Deposit shall be by wire transfer, cashier's check or certified check, payable to "Archer & Greiner, P.C., IOLA Attorney Trust Account". Seller, Seller's Counsel and Advisor shall have no liability to any party in connection with its services with respect to Deposits except for willful misconduct, gross negligence or bad faith. Seller's Counsel, at its discretion, may either immediately deposit Deposits into its IOLA Attorney Trust Account or may hold Deposits pending the outcome of the Auction.

C.    In the event that the Seller does not consummate a sale of the Property, for any reason (other than the Bidder's failure to consummate a sale), the Seller's sole obligation and liability shall be to refund the Deposit to the Bidder.

D.    No Bid shall be deemed to be "accepted" by Seller unless and until the Court has entered the Sale Order.

## V.   SELLER'S PRE-AUCTION DISCRETION

A.    Seller reserves the right to negotiate any offer made to purchase the Property, including the form of Contract and to determine whether it is beneficial to the estate and the creditors to enter into a stalking-horse agreement for the Property prior to the

Auction or to withdraw the Property from the auction and sell it directly without an auction, subject to Court approval. Upon consultation with 124 NY, the Seller retains the complete discretion in revising these Bid Procedures in accordance with its directive to maximize the value of the sale of the Property.

B.    The Debtor may enter into an agreement for the Sale with a Potential Bidder (the "**Stalking Horse Bidder**") prior to the Auction. The following procedures and protections shall apply with respect to a Stalking Horse Bidder:

1.    <u>Selection of Stalking Horse Bidder</u>.  The Debtor shall have authority to select a Stalking Horse Bidder, upon consultation with 124 NY.  A party shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a Contract by the Bid Deadline, and (ii) it tenders the Qualified Bid.  In the event that the Seller selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid at a fixed amount (the "**Stalking Horse Purchase Price**").

2.    <u>Bid Protections</u>.  If the Seller consummates a transaction other than a transaction with the Stalking Horse Bidder, then the Stalking Horse Bidder shall be entitled to the following protections (the "**Bid Protections**"):

(i)    a "Break-Up Fee" in an amount of $100,000.

3.    <u>Competitive Bid.</u>  In the event of a competitive auction including a Stalking Horse, the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Bid Protections plus $100,000, taking into account the First Bidding Increment as applicable.

4.    <u>Rebidding.</u>  In the event of rebidding, the Stalking Horse Bidder shall be deemed to have waived the Bid Protections.

## STEP TWO

I.    **AUCTION:**                                               **June 11, 2018 at 11:00 A.M.**

A.    Provided that the Property is not already sold or otherwise disposed of, then Seller shall Auction the Property on the Auction Date at the Auction Venue.  The Seller reserves the right to change the location and time of the Auction.  Only the Bids of Qualified Bidders will be considered at the Auction and Seller shall have no obligation to admit to the Auction any party who it does not deem a Qualified Bidder (with the exception of 124 NY).

B.    Based upon the terms of the Qualified Bids, the level of interest expressed in the

Property and such other information as the Seller may determine to be relevant, Seller shall have the right, after consultation with 124 NY, to amend the procedures set forth herein and to adopt, at any time, in its sole and absolute discretion, such rules for the bidding process which it determines will better promote the goals of the bidding process. Among other things, Seller shall determine, in the exercise of its sole and absolute discretion, and unless otherwise set forth herein, acceptable bidding increments, which may be modified by the Seller during the Auction. Seller may offer the Property for bidding in successive rounds; may conduct a silent or open Auction; and may otherwise conduct the Auction in the manner that it deems most appropriate for soliciting the highest and best Bids.

C.      The Seller shall receive Bids at the Auction for the Property with the intention of selling the Property to the Successful Bidder. At the conclusion of the Auction or a later point to be determined by the Seller, upon consultation with 124 NY, the Seller will determine which Bid is the highest and best Bid and which Bid is the next highest and best Bid and, based upon that determination, will announce the Successful Bid and the Back-up Bid, respectively.

D.      The Seller's determination of what constitutes the first and second "highest and best" Bids will be based upon the exercise of the Seller's discretion and may take into consideration the views of 124 NY, price, modifications to the Contract, closing risk, risk of delay, financial condition, experience, and such other factors as the Seller may deem relevant.

E.      At the conclusion of the Auction, both the Successful Bidder and the Back-up Bidder shall update and re-execute their respective Contracts and any other agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid and the Back-up Bid were made.

F.      Formal rejection of a Bid by the Seller will not occur unless and until (a) the Seller expressly rejects a Bid in writing; or (ii) the Irrevocability Period lapses.

G.      The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Seller equals ten percent (10%) of the Successful Bid.

H.      All supplemental Deposits shall be paid by wire transfer, cashier's check or certified check payable to Archer & Greiner, P.C., IOLA Attorney Trust Account.

I.      The establishment of a Successful Bid and a Back-up Bid does not release any Bidder from its obligations and all Bids remain open and irrevocable for the duration of the Irrevocability Period.

J.      Return of Deposits:

1.   Seller reserves the right to hold the Deposit of the Back-up Bidder until expiration of the Irrevocability Period.

2.   Seller shall return the Deposits of all Bidders other than the Successful Bidder and the Back-up Bidder within five (5) business days of the consummation of the Sale.

K.   Bids made after the close of the Auction will be not be considered.

## STEP THREE

I.   **COURT APPROVAL**                                    **JUNE 13, 2018 at __:___.M.**

A.   Any objection to the sale must be filed with the Court on or before June 12, 2018 at 5:00 p.m.

B.   The Sale Hearing will be held in the Court on June 13, 2018 at __:__ _.m. Timely filed objections to the proposed sale may be heard by the Court at that time.

## STEP FOUR

I.   **CLOSING**                                                          **JUNE 15, 2018**

A.   The Closing shall occur on or before June 15, 2018, or otherwise in accordance with the terms of an approved Contract and the Sale Order. WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE SUCCESSFUL BIDDER IS OF THE ESSENCE.

B.   In the event of the failure by the Successful Bidder to consummate a sale of the Property, the Back-up Bidder shall be deemed the Successful Bidder without further Order of the Court, and shall proceed to Closing no later than thirty (30) days following the Seller's tender of a notice to the Back-up Bidder at the address set forth on the Offer & Bidder Registration Form. The Seller shall be entitled to retain the Deposit (as supplemented) of any Successful Bidder or Back-Up Bidder who fails to close because of a breach or failure by such Successful Bidder and such Deposit shall be deemed forfeited by such defaulting Successful Bidder, shall not be credited against the purchase price for the benefit of a Back-up Bidder (or other purchaser), and Seller specifically reserves the right to seek all available damages from the defaulting Bidder or Back-Up Bidder.

C.   The balance of the purchase price shall be paid by the Successful Bidder by wire transfer or an endorsed bank or certified check at the Closing. To the extent the Successful Bidder is not 124 NY, 124 NY shall be paid the 124 NY Payoff Amount

(as may be adjusted through Closing) at Closing and the proceeds of sale may otherwise be distributed to multiple parties, including 124 NY, as may be provided in the Sale Order.

## ADDITIONAL PROVISIONS

**I.    DISCLAIMER**

A.    Any sale or other disposition of all or a portion of the Property shall be without representations or warranties of any kind, nature or description by the Seller, its agents or representatives.  The Property shall be transferred on an "as is" and "where is" basis.

B.    Any and all Data provided to prospective Bidders:

1.    has been prepared for informational purposes only; and

2.    is being furnished solely for use by Bidders in considering their interest in acquiring the Property.

C.    By accepting Data from the Seller, Seller's Counsel and/or Advisor, the recipient acknowledges and agrees that the Data has been prepared to assist the recipient in making its own evaluation of the Property and the Data does not purport to be all-inclusive or to contain all of the information that a Bidder may desire.  In all cases, Bidders should conduct their own investigation and analysis of the Property, conduct site inspections, and scrutinize all of the Data. Seller, Seller's Counsel and Advisor have assumed no responsibility for independent verification of any of the Data and have not in any way audited such information.  Seller's Counsel and Advisor are not making nor will they make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Property and with respect to the accuracy, reliability or completeness of any Data, except as expressly stated in a Contract executed by Seller.   Seller, Seller's Counsel and Advisor and their respective partners, officers, directors and employees, affiliates and representatives, expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.

D.    Each Bidder, by submitting a Bid for the Property, shall be deemed to acknowledge and represent:

1.     that it is bound by these Bid Procedures;

2.     that it had an opportunity to inspect and examine the Property, the Data and all relevant publicly available documents and records, and to review all other pertinent documents and information with respect to the Property prior to making its offer and that it relied solely on that review and upon its own investigation and inspection of the Property in making its Bid; and

3.     that it is not relying upon any written or oral statements, representations, or warranties of the Seller, or the Seller's agents or representatives except as to statements that were made by Seller that are knowingly false.

## II.    <u>OTHER PROVISIONS</u>

A.     All of the Seller's right, title and interest in and to the Property shall be assigned and sold, free and clear of all liens, claims, encumbrances and security interests, which shall attach to the net proceeds received by the Seller as a result of the sale with the same force and effect that they now have, subject the Sale Order.

B.     The sale of the Property shall **not** include personal property, records, inventory, fixtures, trade fixtures, or other furnishings or equipment located in or on the Property except as set forth in the Contract.

C.     Except to the extent of the applicability of section 1146(c) of the Bankruptcy Code, all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of a Property shall be the sole responsibility of the Successful Bidder and shall be paid at the Closing.

D.     The Seller, at or before the Auction, may impose such other and additional terms and conditions as it may reasonably determine to be in the best interests of the Debtor, its estate, creditors and other parties interest.

E.     The Seller may reject any Bid that in its sole reasonable discretion it deems to be: (i) inadequate or insufficient; or (ii) contrary to the best interest of the Seller's estate and creditors. Such rejection may be made at any time prior to Court approval.

F.     Any and all disputes related or pertaining to or resulting or arising from the marketing process, the Auction, the sale of the Property, and/or the conduct of the Seller, Advisor and/or any of Seller's other professional advisors, including any such advisor acting as escrow agent, shall be adjudicated solely by the Court. The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Court for all such matters.

G.     Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder or agent acting on another's behalf. Bidder acknowledges that it

will not look to the Seller, Seller's Counsel and/or Advisor or their respective representatives for the payment of any fee or commission. Seller is compensating Advisor pursuant to a separate Court approved agreement and as may be set forth in any applicable order of the Court.  In addition, Bidder agrees to be responsible for the payment of any fee, commission or other compensation payable to any broker, finder or agent who alleges it has dealt with or through Bidder including Advisor. Bidder hereby indemnifies, defends and holds the Seller, Seller's Counsel and Advisor and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any claim or claims by any broker, finder or similar agent for commissions, fees or other compensation who allege that they have dealt with the Seller and/or Advisor in connection with the Property. Bidder understands that the Seller, Seller's Counsel and Advisor and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with Bidder's possible purchase. If Bidder is working with a broker, finder or agent other than Advisor, Bidder shall be responsible for the payment of any fees, if any, to such broker, finder or agent.

H.    Enforcement:  If any party shall seek to enforce or protect its rights under this document or under any document or instrument executed and delivered in connection herewith in any action, suit, or other proceeding, including all bankruptcy cases and proceedings, the prevailing party shall be entitled to receive from the other party payment of its costs and expenses, including reasonable attorneys' fees incurred (whether such costs or fees are incurred before or after the commencement of the proceeding), including any and all appeals or petitions there from.

I.    Severability:  The provisions hereof are severable and the invalidity of any provision hereof will not invalidate any other provision.

J.    Entire Agreement:  This document, combined with the Contract and the Offer & Bidder Registration Form, shall constitute the entire agreement between the parties, and any prior understanding or representation of any kind shall not be binding upon any party except to the extent it has been expressly incorporated into the Contract.

K.    Captions:  The captions to sections and subsections of this document are solely for the convenience of the parties, are not a part of this document, and shall not be used for the interpretation or determination of the validity of this document or any provision hereof.

L.    Notice: Any correspondence or required notice shall be addressed as follows and shall be sent by Certified Mail, Return Receipt Requested, or by overnight delivery service, either of which notices shall be supplemented by email transmission, and shall be effective as of the date of actual receipt of the Certified Mail or overnight

delivery service.  Such notice shall be addressed as follows:

1.      If to a Bidder, to the Bidder and its attorney (if disclosed on the Offer & Bidder Registration Form) using the contact information set forth on the Offer & Bidder Registration Form.

2.      If to any one or more of Seller, Seller's Counsel, and/or Advisor, then to all of such parties at the addresses set forth in the Definitions section above.

Dated: _____, 2018

APPROVED AS TO
FORM & SUBSTANCE
this ____ day of _____, 2018

Bidder: _____

Signature: _____
Name:
Title:
Work Phone Number:
Cell Phone Number:
Email Address:

## **EXHIBITS**

A -      Offer & Bid Registration Form
B -      Contract
C -      First Competitive Bid Requirement

Voras Enterprise Inc.
Ch. 11 Case No. 1-17-45570 (NHL)

**EXHIBIT A**
**OFFER & BIDDER REGISTRATION FORM**

Bidder, _____, hereby:

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the bid procedures approved by the United States Bankruptcy Court for the Eastern District of New York ("Bid Procedures"); and

- Offers to buy the following Property for the price set forth below provided in the Bid Procedures and Contract, pursuant to this Offer & Bidder Registration Form and the terms and conditions of the accompanying Contract.

Bidder's offer is for the following Property at the following price:

| Property Description | PRICE |
|---|---|
| 601-609 Throop Avenue<br>Brooklyn, New York 11216<br>Block: 1856 – Lot: 1 | |

Bidder hereby warrants and represents:

(a) Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bid Procedures, the terms and conditions of which are incorporated herein by reference.

(b) Bidder has received, reviewed and understands the terms and conditions of the Contract, the terms and conditions of which are incorporated herein by reference.

(c) To the extent that the words and phrases which are capitalized in this Offer & Bidder Registration Form have been defined in the Bid Procedures or in the Contract, those definitions are incorporated herein by reference.

(d) Each Bid shall constitute a binding, irrevocable "Bid" pursuant to the Bidding Procedures.

(e) Each Bid along with any subsequent Bids is irrevocable pursuant to the terms of the Bidding Procedures.

(f) Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the Property on an all-cash, "as-is, where-is" basis, with no contingencies.

(g) Bidder had an opportunity to inspect and examine the Property and to review all other pertinent Data and documents with respect to the Property prior to making its Bid and Bidder relied solely on that review and upon its own investigation and inspection of the Property in making its Bid; and Bidder is not relying upon any written or oral statements, representations, or warranties of the Seller, Seller's Counsel and/or Advisor or any of Seller's other agents or representatives.

(h) The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Seller equals ten percent (10%) of the Successful Bid.    **All supplemental Deposits shall be paid by wire transfer, cashier's check or certified check payable to "Archer & Greiner, P.C., IOLA Attorney Trust Account."**

(i) Immediately following the Auction, both the Successful Bidder and the Back-up Bidder shall modify and re-execute the Contract, as appropriate, without varying its terms other than to reflect the terms of the Successful Bid as publicly announced at the Auction.

Voras Enterprise Inc.
Ch. 11 Case No. 1-17-45570 (NHL)

(j)    Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. § 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

(k)    Bidder's intended use of the Property complies completely with any applicable use clauses or deed restrictions.

(l)    If needed to prove to the Court that Bidder can provide the "feasibility" of the transaction or "adequate assurance of future performance," Bidder will make [INSERT NAME AND TITLE] _____, available to testify at the Court on the Sale Hearing Date and provide the following documents in support thereof: _____ _.

AGREED & ACCEPTED this _____ day of _____, 2018

Bidder: _____
By:_____

*BIDDER I.D.*

Bidder's Address:_____

Bidder's Contact:_____

Bidder's Work Phone Number:_____

Bidder's Cell Phone Number: _____

Bidder's Email Address: _____

Bidder's Tax ID Number:_____

*ATTORNEY I.D.*

Bidder's Attorney:_____

Bidder's Attorney's Address:_____

Bidder's Attorney's Phone Number:_____

Bidder's Attorney's Cell Phone Number:_____

Bidder's Attorney's Email Address: _____

*BANK REFERENCE*

Bank & Bank Contact:_____

Bank Address:_____

Bank Contact's Phone Number:_____

Bank Contact's Email Address:_____

# EXHIBIT B
## Contract

Contract of Sale for New York office, commercial and multi-family residential premises

# Contract of Sale---Office, Commercial and Multi-Family Residential Premises

## Table of Contents

Schedule A. Description of premises (to be attached)
Schedule B. Permitted exceptions
Schedule C. Purchase price
Schedule D. Miscellaneous
Schedule E. Rent schedule (to be attached)
Section 1. Sale of premises and acceptable title
Section 2. Purchase price, acceptable funds, existing mortgages, purchase money mortgage and escrow of downpayment
Section 3. The closing
Section 4. Representations and warranties of seller
Section 5. Acknowledgments of purchaser
Section 6. Seller's obligations as to leases
Section 7. Responsibility for violations

Section 8. Destruction, damage or condemnation
Section 9. Covenants of seller
Section 10. Seller's closing obligations
Section 11. Purchaser's closing obligations
Section 12. Apportionments
Section 13. Objections to title, failure of seller or purchaser to perform and
Section 14. Broker
Section 15. Notices
Section 16. Limitations on survival of representations, warranties, covenants and other obligations
Section 17. Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated the      , day of      , 2018,

Between

**Voras Enterprise Inc.**

Address:

132 Ralph Avenue, Brooklyn, New York 11233

("Seller") and

Address:

("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

## Schedule A
## DESCRIPTION OF PREMISES

The Premises are located at or known as:
Street Address:601-619 Throop Avenue
City:Brooklyn    State:New York    Zip:11216
Tax Map Designation:    Section:        Block:1856        Lot:1

(☒ metes and bounds description attached hereto)

## Schedule B
## PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7.        (a)        Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

(b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

## Schedule C
## PURCHASE PRICE

The Purchase Price shall be paid as follows:

(a) By ~~check subject to collection~~, the receipt of which is hereby acknowledged by Seller:        $
Wire or official bank check

(b) By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02:    $

(c) By acceptance of title subject to the following Existing Mortgage(s):    $

(d) By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, in the sum of $    payable as follows:

Interest Rate:    Term:    Monthly payment:    Prep. Fee:    Other provisions:    $

Making for a total Purchase Price of:    $

## Schedule D
## MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):Kensington Vanguard National Land Services / Old Republic National Title

Insurance Company

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):

5. Seller's tax ID Nos (§2.05) #1:46-1127108    #2:    #3:    #4:

6. Buyer's tax ID Nos (§2.05) #1:    #2:    #3:    #4:

7. Scheduled time and date of Closing (§3.01): Date:to align with the bankruptcy court order,    Time:    o'clock.

8. Place of Closing (§3.01):at the office of Seller's attorney

9. Assessed valuation of Premises (§4.10):

10. Fiscal year and annual real estate taxes on Premises (§4.10): Fiscal Year:    Annual Taxes:

11. Tax abatements or exemptions affecting Premises (§4.10):

12. Assessments on Premises (§4.13):

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):Seller will not cure any violations

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):Seller will not cure any title defects

15. Broker, if any (§14.01):Keen-Summit Capital Partners LLC, subject to court order

16. Party to pay broker's commission (§14.01):Seller

17. Address for notices (§15.01):

>       If to Seller:
>       Voras Enterprise Inc.
>       Attn:  Jeffrey Dunston, CEO
>       132 Ralph Avenue
>       Brooklyn, New York 11233
>       Email:  jdunston@nebhdco.org

>       with a copy to:
>       Allen G. Kadish, Esq.
>       Archer & Greiner, P.C.
>       630 Third Avenue
>       New York, New York 10017
>       Email:  akadish@archerlaw.com

>       If to Purchaser:

>       with a copy to:

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):Except as otherwise provided in this contract, nothing shall survive Closing.

19. Additional Schedules or Riders (§17.08):See attached Rider

## Schedule E
## RENT SCHEDULE

(☒ if more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)

| Name | Apt. No. | Rent | Due | Security |
|------|----------|------|-----|----------|

**See attached Schedule E - Rent Schedule**

## Section 1. Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvement situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as
Street Address:601-609 Throop Avenue
City: Brooklyn State: New York Zip:11216
Tax Map Designation: Section:    Block:1856 Lot:1

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

## Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or    by wire or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required there under prior to the Closing, is less than the aggregate amount of the

Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contact, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent

(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or

(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.

If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefore and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii)    if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of

maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagee to confirm such subordination.

(c) The Purchase Money Mortgage shall contain the following additional provisions:

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], or not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in an I OLA special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is

hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(d) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(e) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

### Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

### Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;

(b) no renewal or extension options have been granted to tenants;

(c) no tenant has an option to purchase the Premises;

(d) the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

**Section 5. Acknowledgments of Purchaser**
Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

**Section 6. Seller's Obligations as to Leases**

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:

(a) amend, renew or extend any Lease in any respect, unless required by law;

(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or

(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with

(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and

(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the

~~manner specified in §2.02, the rent and additional rent that~~ would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by ~~Seller on account thereof.~~

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchase Price or give rise to any other claim on the part of Purchaser.

### Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, *not* shall be removed or complied with by Seller. ~~If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if:~~

~~(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or~~

~~(b) the Building is a multiple dwelling and either~~

~~(i) such violation is rent-impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or~~

~~(ii) a proceeding has been validly~~ commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole ~~responsibility of Purchaser.~~

~~§7.02. If the reasonably estimated aggregate cost to~~ remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the ~~sole liability of Seller shall be as set forth in §13.02, unless~~

~~Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.~~

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:

(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or

(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

### Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

### Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

~~§9.01. The Existing Mortgage(s) shall not be~~ amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to ~~be paid or made under the Existing Mortgage(s).~~

~~§9.02. Seller shall not modify or amend any Service~~ Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises ~~upon not more than 30 days notice.~~

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

## Section 10. Seller's Closing Obligations

At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).

Seller shall pay the fees for recording such certificate(s). Any Mortgage which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

~~§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).~~

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

~~§10.12. Checks to the order of the appropriate~~ officers in payment of all applicable real property ~~transfer~~ taxes and copies of any required tax returns ~~therefor~~ executed by Seller, which checks shall ~~be certified~~ or official bank checks if required by ~~the taxing~~ authority, unless Seller elects to have ~~Purchaser~~ pay any of such taxes and credit Purchaser ~~with the amount thereof.~~

~~§10.13. To the extent they are then in Seller's~~ possession, copies of current painting and ~~payroll~~ records. Seller shall make all ~~other Building~~ and tenant files and records ~~available~~ to Purchaser for copying, which obligation ~~shall survive the Closing.~~

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

~~§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.~~

~~§10.16. If Seller is a corporation and if required by~~ Section 909 of the Business Corporation Law, a ~~resolution of~~ Seller's board of directors authorizing the sale ~~and delivery of~~ the deed and a certificate executed by the ~~secretary~~ or assistant secretary of Seller certifying as ~~to~~ the adoption of such resolution and setting ~~forth~~ facts showing that the transfer complies with ~~the requirements~~ of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish ~~compliance with such law.~~

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

## Section 11. Purchaser's Closing Obligations

At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

## Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a) prepaid rents and Additional Rents (as defined in §12.03);

(b) interest on the Existing Mortgage(s);

(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

~~(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing~~

(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;

(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g) permitted administrative charges, if any, on tenants' security deposits;

(h) dues to rent stabilization associations, if any;

(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. ~~If any tenant is in arrears in the payment of~~ rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

(a) first to the month preceding the month in which the Closing occurred;

(b) then to the month in which the Closing occurred;

(c) then to any month or months following the month in which the Closing occurred; and

(d) then to the period prior to the month preceding ~~the month in which the Closing occurred.~~

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

### Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days ~~or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.~~

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey ~~with a credit against the monies payable at the Closing equal to the~~ reasonably estimated cost to cure the same (~~up to the~~ Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be ~~to~~ refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination ~~but~~ not to exceed the net amount charged by Purchaser's title company therefor without issuance of a ~~policy, and the net cost of updating the existing survey of the~~

~~Premises or the net cost of a new survey of the Premises.~~ If there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the ~~Premises, other than Existing Mortgages, of which Seller has actual knowledge.~~

§13.03 Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

### Section 14. Broker

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any

representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

### Section 15. Notices

~~§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.~~

### Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. ~~The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.~~

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

### Section 17. Miscellaneous Provisions

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. ~~Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.~~

~~IN WITNESS WHEREOF~~, the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):                                      BUYER(S):

_____          _____

_____          _____

_____          _____

_____          _____

~~Receipt by Escrowee:~~

~~The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05:~~

_____

Old Republic National Title Insurance Company

Title Number:  839840(O-NY-CR-KV)

## SCHEDULE A
## DESCRIPTION

The land referred to in this Certificate of Title is described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Decatur Street and the easterly side of Throop Avenue;

RUNNING THENCE northerly, along the easterly side of Throop Avenue, 200 feet 0 inches to the southerly side of McDonough Street;

THENCE easterly, along the southerly side of McDonough Street, 40 feet 0 inches;

THENCE southerly parallel with the westerly side of Sumner Avenue, 100 feet 0 inches;

THENCE easterly parallel with the southerly side of McDonough Street, 45 feet 0 inches;

THENCE southerly parallel with the westerly side of Sumner Avenue, 20 feet 0 inches;

THENCE westerly parallel with the northerly side of Decatur Street, 40 feet 0 inches;

THENCE southerly parallel with the westerly side of Sumner Avenue, 80 feet 0 inches to the northerly side of Decatur Street;

THENCE westerly, along the northerly side of Decatur Street, 45 feet 0 inches to the corner above mentioned, the point or place of BEGINNING.

Certificate of Title

(839840(O-NY-CR-KV).pfd/839840(O-NY-CR-KV)/5)

| SCHEDULE E - RENT SCHEDULE | | | | | |
|---|---|---|---|---|---|
| NAME | UNIT | RENT | COMMENCEMENT DATE | TERM | SECURITY DEPOSIT |
| Bedford Stuyvesant Family Health Center | A | Initially $58,000 per annum, then as set forth in the Lease. | October 1, 2014 | 60 months with tenant's option to extend for 60 months | $9,666.67 |
| Metro Urgent Medical Care of Brooklyn PLLC | B | Initially $139,500 per annum, then as set forth in the Lease. | November 21, 2014 | 124 months | $23,250.00 |
| Brooklyn Legal Services Corporation A | 300 | Initially $141,130 per annum, then as set forth in the Lease. | July 1, 2016 | 24 months with tenant's option to extend for 5 years | $11,760.83 |
| New Cingular Wireless PCS, LLC | ROOF | $2,750.00 | July 18, 2013 | 5 years with tenant's option to extend for 5 years | |

214401457v1



**Buildings**

## *Certificate of Occupancy*

Page 1 of 2

**CO Number:** 301043252F

This certifies that the premises described herein conforms substantially to the approved plans and specifications and to the requirements of all applicable laws, rules and regulations for the uses and occupancies specified.  No change of use or occupancy shall be made unless a new Certificate of Occupancy is issued.  *This document or a copy shall be available for inspection at the building at all reasonable times.*

**A.**  Borough:  Brooklyn

Address:  601 THROOP AVENUE

Building Identification Number (BIN):  3053556

**Block Number:** 01856

**Lot Number(s):**  1

**Building Type:**  Altered

**Certificate Type:**  Final

**Effective Date:**  03/22/2001

*For zoning lot metes & bounds, please see BISWeb.*

**B.**  Construction classification:  1-B  (1968 Code)

Building Occupancy Group classification: E  (1968 Code)

Multiple Dwelling Law Classification:  None

No. of stories:  5   Height in feet:  79   No. of dwelling units:  0

**C.**  Fire Protection Equipment:
None associated with this filing.

**D.**  Type and number of open spaces:
None associated with this filing.

**E.**  This Certificate is issued with the following legal limitations:
None

Borough Comments:  None

Acting
Borough Commissioner

Commissioner

*DOCUMENT CONTINUES ON NEXT PAGE*


**Buildings**

## *Certificate of Occupancy*

CO Number: **301043252F**

### Permissible Use and Occupancy

All Building Code occupancy group designations are 1968 designations, except RES, COM, or PUB which are 1938 Building Code occupancy group designations.

| Floor From To | Maximum persons permitted | Live load lbs per sq. ft. | Building Code occupancy group | Dwelling or Rooming Units | Zoning use group | Description of use |
|---|---|---|---|---|---|---|
| CEL | | 150 | B-2 | | 6 | STORAGE, BOILER RM, METER RM |
| 001 | 55 | 120 | E | | 6 | |
| 001 | 55 | 120 | E | | 6 | MEDICAL OFFICES,OFFICES |
| 001 | 55 | 120 | E | | 6 | |
| 002 | 65 | 120 | E | | 6 | ENTIRE OFFICE(CORE)VACANT* |
| 003 | 48 | 120 | E | | 6 | OFFICES COMBINED BELOW 613-619 THROOP |
| 004 | 43 | 120 | E | | 6 | OFFICES |
| 005 | 43 | 120 | E | | 6 | OFFICES(*NOTE:THE FOLLOWING FLOOR AREA TO REMAIN UNOCCUPIED UNTIL TENANT IMPROVEMENTS ARE FILED,APPROVED & INSPECTED BY NYC DEPARTMENT OF BUILDINGS:SECOND FLOOR (ENTIRE) |

END OF SECTION

Acting
Borough Commissioner

Commissioner

**END OF DOCUMENT**

301043252/000  10/26/2011 2:54:51 PM

## RIDER TO CONTRACT OF SALE

1.      This Rider forms part of the contract of sale.  To the extent the terms of this Rider conflict with the terms of the contract, the terms of the Rider shall govern.

2.      This transaction is subject to order of the court in the case styled In re: Voras Enterprise Inc., pending in the United States Bankruptcy Court for the Eastern District of New York under Chapter 11 Case No. 1-17-45570 (NHL).

3.      The Seller will not clear any violations.  The Purchaser shall accept title to the Premises with all violations.

4.      The Seller will not clear any title defects.  The Purchaser shall accept title to the Premises with all title defects.

5.      The Seller will not obtain any permits or certificates of occupancy or certificates of compliance.  The Purchaser shall accept title to the Premises with the certificate of occupancy as currently exists.

6.      Any rent arrears for periods prior to closing received by the Purchaser after closing shall be promptly delivered and paid to the Seller.  This provision shall survive Closing for a period of six months after the Closing Date.

7.      Subject to court order, the leases on Schedule E annexed hereto are assigned. Subject to motion to the bankruptcy court, the contract with Imperial Fire Protection Systems Inc is assigned to the extent it is assignable.

8.      With respect to the Premises, Purchaser shall assume all liabilities.

9.      Notice:  Any correspondence or required notice under this contract shall be in writing and addressed as follows and shall be sent by certified mail, return receipt requested, or by overnight delivery, either of which notices shall be supplemented by email, and shall be

effective as of the date of actual receipt of the certified mail or overnight delivery.  Such notice shall be addressed as follows:

> A.    If to Purchaser, to the Purchaser and its attorney (if disclosed) using the contact information set forth in the contract.
>
> B.    If to Seller, to the Seller and its attorney using the contact information set forth in the contract.

10.    The Downpayment shall be deposited into Seller's attorney's non-interest bearing IOLA attorney trust account and shall be released at Closing.  If the Closing does not occur, the Downpayment shall be held and released pursuant to court order.


SELLER                                                      PURCHASER


_____                        _____

## Exhibit C

### First Competitive Bid Requirement[1]

In order to achieve Closing free and clear of all liens, claims, encumbrances and interests in the Property and the proceeds thereof, the following is the First Bid Increment to be reflected in a Qualified Bid, over and above the 124 NY Payoff Amount in order to satisfy the First Competitive Bid Requirement:

|  | APPROXIMATE AMOUNT | ESTIMATED AS OF | PROJECTED AS OF JUNE 1, 2018 |
|---|---|---|---|
| Pre-Petition Tax Certificates held by MTAG Services, LLC | $162,386.57 | March 1, 2018 | $198,983.61 |
| Pre–Petition Mechanics Lien held by New York Design Architects, LLP | $47,165.18 | February 28, 2018 | $47,165.18 |
| New York City Water Board [New York City Department of Environmental Protection] | $35,239.34 | January 22, 2018 | $38,106.76 |
| New York City Office of Administrative Trials and Hearings | $5,320.64 | January 24, 2018 | $5,675.62 |
| New York City Department of Finance | $99,764.79 | April, 23, 2018 | $99,764.79 plus interest |
| 124 NY Inc. Payoff Amount | $7,476,537.50 | October 26, 2017 | $7,900,000.00 |
| Real Estate Advisory Fee (5%) (projected as approximately 5% of $8,000,000.00) | $400,000.00 |  | $400,000.00 |
| Madison Realty Capital LP Exclusivity Walk-Away Fee | $200,000.00 |  | $200,000.00 |
| **SUBTOTAL ESTIMATED:** |  |  | $8,889,695.96 |
| Minimum Benefit to the Estate | $100,000.00 |  | $100,000.00 |
| **TOTAL ESTIMATED:** |  |  | $8,989,695.96 |

First Competitive Bid Requirement ≈ $9,000,000.00

First Bidding Increment (First Competitive Bid less 124 NY Payoff Amount) ≈ $1,100,000.00

---

[1] Subject to update and adjustment.

**<u>Exhibit 2</u>**

**Sale Notice**

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Allen G. Kadish
Harrison H.D. Breakstone
Tel: (212) 682-4940
Fax: (212) 682-4942
Email:  akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                Chapter 11

VORAS ENTERPRISE INC.,         Case No. 1-17-45570 (NHL)

        Debtor.

----------------------------------------------------------x

## <u>NOTICE OF AUCTION AND SALE HEARING</u>

      **PLEASE TAKE NOTICE** that, on _____ __, 2018, VORAS ENTERPRISE INC., the above-captioned debtor and debtor in possession (the "**<u>Debtor</u>**"), filed its motion (the "**<u>Motion</u>**")[1] for entry of (a) an order (the "**<u>Bid Procedures Order</u>**"), (i) approving sale procedures (the "**<u>Bid Procedures</u>**") for the sale (the "**<u>Sale</u>**") of certain of the Debtor's assets (the "**<u>Assets</u>**"); (ii) approving stalking horse protections; (iii) scheduling a hearing (the "**<u>Sale Hearing</u>**") on the Sale and setting objection, bidding, and related deadlines with respect to the Sale; (iv) approving the form of notice of the Auction, Bid Procedures and Sale Hearing, substantially in the form annexed as **<u>Exhibit 2</u>** to the Bid Procedures Order (the "**<u>Auction and Sale Notice</u>**"), and the form and manner of notice of the assumption, assignment, and/or sale of executory contracts and unexpired leases and related cure amounts, if any, substantially in the form annexed as **<u>Exhibit 3</u>** to the Bid Procedures Order (the "**<u>Cure Notice</u>**"); and (v) granting related relief; and (b) an order, substantially in the form to be filed in advance of the Sale Hearing (the "**<u>Sale Order</u>**"), (i) authorizing the Sale of the Property free and clear of liens, claims encumbrances, and other interests pursuant to the terms of the contract (the "**<u>Contract</u>**");[2] (ii) authorizing and approving the Contract; (iii) approving the assumption, assignment, and/or sale of executory contracts and unexpired leases, as necessary, in connection with the Sale; (iv) providing for the payment of net proceeds from the Sale of the Property to 124 NY Inc. ("**<u>124 NY</u>**") to the extent necessary to fully satisfy the "124 NY Allowed Secured Claim"; and (v) granting related relief.

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is seeking to sell the Property to the Successful Bidder. Approval of the Sale to the Successful Bidder may result in, among other things, the assumption, assignment, and/or sale by the Debtor of certain executory contracts or leases. If you are a party to an executory contract or lease with a Debtor, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

**PLEASE TAKE FURTHER NOTICE** that, on _____ __, 2018, the Court entered the Bid Procedures Order [Docket No. __]. Pursuant to the Bid Procedures Order, the Auction shall take place on June 11, 2018 at 11:00 a.m. at the offices of Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017. Only a Qualified Bidder that has submitted a Qualified Bid no later than June 6, 2018 (the "**Bid Deadline**") may participate in the Auction. Any party that wishes to take part in this process and submit a bid for the Property must submit their Qualified Bid prior to the Bid Deadline and in accordance with the Bid Procedures. Parties interested in receiving information regarding the Sale of the Property should contact the Debtor's real estate advisor, Keen-Summit Capital Partners LLC, Attn: Harold Bordwin (hbordwin@keen-summit.com), 555 Madison Avenue, 5th Floor, New York, New York 10022, telephone: (410) 690-8788.

**PLEASE TAKE FURTHER NOTICE** that the Court also scheduled the Sale Hearing to consider approval of the Sale of the Property to the Successful Bidder free and clear of all liens, claims, encumbrances, and interests before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Courtroom 3577, Brooklyn, New York 11201-1800 on **June 13, 2018 at __:_0 _.m.,** or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest (other than 124 NY) other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Sale, or the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Eastern District of New York, on or before 4:00 p.m. (prevailing Eastern Time) on June 12, 2018 (the "**Sale Objection Deadline**"), or such later date and time as the Debtor may agree and (d) be served so as to be received on or before the Sale Objection Deadline by (:  (i) counsel for the Debtor, Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn:  Allen G. Kadish; (ii) counsel for 124 NY, Stagg, Terenzi, Confusione & Wabnik, LLP, 401 Franklin Avenue, Suite 300, Garden City, New York 11530, Attn: Ronald M. Terenzi; and (iii) the Office of the United States Trustee, Attn: Marylou Martin, 201 Varick Street, Suite 1006, New York, New York 10014.

**PLEASE TAKE FURTHER NOTICE** that this Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Bid Procedures Order, the Bid Procedures, and the Motion, which shall control in that order in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety. Copies of the Motion, the Contract, the Bid Procedures and the Bid Procedures Order may be obtained

by written request to counsel to the Debtor at akadish@archerlaw.com.  In addition, copies of the aforementioned pleadings may be found on the Bankruptcy Court's website, www.nyeb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BID PROCEDURES ORDER AND THE BID PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE SALE.**

Dated:  New York, New York
_____ \_\_, 2018

ARCHER & GREINER, P.C.

By:_____
    Allen G. Kadish
    Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Fax:  (212) 682-4942
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

**<u>Exhibit 3</u>**

**Cure Notice**

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Allen G. Kadish
Harrison H.D. Breakstone
Tel: (212) 682-4940
Fax: (212) 682-4942
Email:  akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| VORAS ENTERPRISE INC., | Case No. 1-17-45570 (NHL) |
|        Debtor. | |

---------------------------------------------------------x

**NOTICE REGARDING
(A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY
BE ASSUMED, ASSIGNED, AND/OR SOLD; (B) CURE AMOUNTS, IF
ANY; AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**TO ALL COUNTERPARTIES TO THE DEBTOR'S EXECUTORY CONTRACTS
AND UNEXPIRED LEASES:**

        **PLEASE TAKE NOTICE** that upon the motion [Docket No. ] (the "**Motion**")[1] of the debtor and debtor in possession in the above-captioned case (the "**Debtor**"), the United States Bankruptcy Court for the Eastern District of New York (the "**Court**") entered an order (the "**Bid Procedures Order**") on June __, 2018 approving certain procedures (the "**Assumption and Assignment Procedures**") for the assumption, assignment, and/or sale of certain of the Debtors' executory contracts (the "**Contracts**") and unexpired leases (the "**Leases**") in connection with the sale of substantially all of the Debtor's assets (the "**Sale**").

        The determination to assume the Contracts and/or Leases identified on the

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

schedule attached hereto as **Exhibit 1** (the "**Cure Notice**") was made as of April __, 2018 and is subject to revision. Additionally, the cure amounts reflected herein and on the Cure Notice were calculated as of April __, 2018 and may be subject to upward or downward adjustment.

       **PLEASE TAKE FURTHER NOTICE** that the Debtor is proposing to assume the Contracts and/or Leases listed on the Cure Notice to which you are counterparty.[2]

       **PLEASE TAKE FURTHER NOTICE** that you are receiving this notice because the Debtor's records reflect that you are counterparty to a Contract or Lease with the Debtor that has not been assumed or rejected as of the date hereof. The Debtor may elect to assume or reject your Contract(s) or Lease(s) in connection with the Sale at the Sale Hearing (as defined below). The Debtor reserves all rights with respect to the assumption or rejection of any Contract or Lease in the event there is no Sale. **Accordingly, if you are counterparty to a Contract or Lease with the Debtor, your Contract or Lease may be assumed by the Debtor.**

       **PLEASE TAKE FURTHER NOTICE** that you are hereby advised to review carefully the information contained in this notice, the Motion, and the Bid Procedures Order. If you would like to obtain a copy of the Cure Notice, the Motion, the Bid Procedures Order, the asset purchase agreement the Debtor seeks to have approved pursuant to the Motion, or any other pleadings filed in the Debtor's chapter 11 case, you should contact the Debtor's bankruptcy counsel at:  Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn: Allen G. Kadish, Esq., akadish@archerlaw.com, tel: (212) 682-4940. You may also obtain copies of any pleadings filed in the Debtor's Chapter 11 Case for a fee at the Court's website at http://www.nyeb.uscourts.gov, for registered users of the Public Access to Court Electronic Records (PACER) System.

       **PLEASE TAKE FURTHER NOTICE** that section 365(b)(1) of the Bankruptcy Code requires that the Debtor cure, or provide adequate assurance that it will promptly cure, any defaults under the executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtor has conducted a thorough review of its books and records and has determined the amounts required to cure monetary defaults, if any, under the Contract(s) or Lease(s). These amounts are set forth on **Exhibit 1** hereto. Please note that if no amount is stated for a particular Contract or Lease, the Debtor believes that there is no cure amount outstanding for such Contract or Lease.

       **PLEASE TAKE FURTHER NOTICE** that absent any Contract Objection (as defined below), the monetary amounts required to cure any existing defaults arising under the Contract(s) or Lease(s) identified above will be satisfied, pursuant to section 365(b)(1) of the

---

[2]  Neither the exclusion nor inclusion of any Contract or Lease on the Cure Notice shall constitute an admission by the Debtor that any such Contract or Lease is in fact an executory contract or unexpired lease capable of assumption under section 365 of the Bankruptcy Code or that such Contract or Lease is necessarily a binding and enforceable agreement.  Further, the Debtor expressly reserves the right to (i) remove any Contract or Lease from the Cure Notice and reject such Contract or Lease as permitted under the Bankruptcy Code and (ii) contest any claim (or claim amount) asserted in connection with assumption of any Contract or Lease.

Bankruptcy Code, by the purchaser of the Debtor's Assets in cash upon closing of the Sale or as otherwise agreed by the Debtor and the counterparty to any such Contract(s) or Lease(s). In the event of a dispute and the Debtor prevails with respect to the cure amount set forth on the Cure Notice, payment of that amount shall be made no later than the later of [___]      business days following the entry of a final order resolving the dispute and approving the assumption, or [___] business days following the closing of the Sale to the Successful Bidder.  If an objection to the proposed assumption or related cure amount is sustained by the Court, however, the Debtor, with the consent of the purchaser, may elect to reject such Contract(s) or Lease(s) in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE** that the hearing at which the Court will consider approval of the Sale (the "**Sale Hearing**") will commence at __:_0_.m. on June **13, 2016,** before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Courtroom 3577, Brooklyn, New York 11201-1800, and may be continued from time to time without further notice. Any objection (a "**Contract Objection**") to (i) the ability to assign a Contract(s) or Lease(s) or (ii) any proposed cure amounts related thereto must be **actually received on or before 4:00 p.m. on June 12, 2016**, or such later date and time as the Debtor may agree (the "**Contract Objection Deadline**"). Any Contract Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; and (c) be served so as to be received on or before the Sale Objection Deadline by:  (i) counsel for the Debtor, Archer & Greiner, P.C., 630 Third Avenue, New York, New York 10017, Attn:  Allen G. Kadish; (ii) counsel for 124 NY, Stagg, Terenzi, Confusione & Wabnik, LLP, 401 Franklin Avenue, Suite 300, Garden City, New York 11530, Attn: Ronald M. Terenzi; and (iii) the Office of the United States Trustee, Attn: Marylou Martin, 201 Varick Street, Suite 1006, New York, New York 10014.

**PLEASE TAKE FURTHER NOTICE** that Objections to the adequate assurance of future performance by a Successful Bidder and/or Next Highest Bidder may be raised at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections to the assumption, assignment, and/or sale of the Contract(s) or Lease(s) identified on the Cure Notice and/or related cure or adequate assurances proposed that remain unresolved as of the Sale Hearing will be heard at the Sale Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE** that any counterparty to a Contract(s) or Lease(s) that fails to object timely to the proposed assumption, assignment, and/or sale and/or cure amount will be deemed to have consented to such assumption, assignment, and/or sale and/or cure amount.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY CONTRACT(S) OR LEASE(S) SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED CONTRACT(S) OR LEASE(S) AT ANY TIME BEFORE THE DATE ON WHICH THE DEBTOR ASSUMES SUCH CONTRACT(S) OR LEASE(S).**

Dated:  New York, New York
　　　　_____ __, 2018

ARCHER & GREINER, P.C.

By:_____

　　Allen G. Kadish
　　Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Fax:  (212) 682-4942
Email: akadish@archerlaw.com
　　　　hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

**EXHIBIT B**

**124 NY Payoff as of Petition Date**

124 NY Inc.
124-19 Metropolitan Avenue
Kew Gardens, New York 11415

ESTIMATED STATEMENT OF ACCOUNT

Voras Enterprise Inc.
c/o Northeast Brooklyn Housing Development Corporation
132 Ralph Avenue
Brooklyn, New York 11233

Property: 601-619 Throop Avenue, Brooklyn, New York
Interest Rate: 12.00%
Default Interest Rate: 24.00%
Interest Paid To: 10/1/2015

Dear Borrower,

Per your request, please find the payoff total due for the specified date of October 26, 2017:

| | |
|---|---|
| Unpaid Principal Balance | $ 6,000,000.00 |
| Regular Interest (10/1/15 – 7/5/17) | $ 1,270,000.00 |
| Default Interest (10/5/15 – 7/5/17) | $ 1,262,000.00 |
| Foreclosure Search | $ 835.00 |
| Other Fees (Inspection Fees) | $ 350.00 |
| Property Insurance Premiums | $ 27,603.26 |
| Interest on Property Insurance | $ 3,257.19 |
| Real Estate Taxes and Fees | $ 181,944.85 |
| Interest on Real Estate Taxes | $ 23,342.08 |
| Legal Fees per Judgment | $ 2,500.00 |
| Legal Costs per Judgment | $ 1,680.00 |
| (Escrow Holdback for property repairs | $ 1,540,000.00) |
| [Judgment Amount | $ 7,233,512.38] |
| Interest on Judgment Amount (7/6/17-10/26/17) | $ 198,921.80 |
| Legal Fees and Costs – Foreclosure (Minus Fees per Judgment) | $ 38,650.00 |
| Foreclosure Sale Fees (Publishing) | $ 2,275.00 |
| Referee's Fees | $ 1,250.00 |
| Other Costs (Sales) | $ 443.32 |
| Foreclosure Fees (Minus Fees per Judgment) | $ 1,485.00 |
| **Total Due:** | **$7,476,537.50** |

**(1)  This statement is valid for 1 day from the date listed above by adding the per diem amount of $1,808.38 per diem to the total payoff amount.**

**SPECIAL NOTE: PAYOFF AND DEFAULT INTEREST.**

Wiring Instructions:
Bank: JP Morgan Chase Bank
ABA: 021000021
Account Name: Law Offices of Alan J. Waintraub PLLC Attorney Trust Account IOLA
Account Number: 673018599
Reference Loan: 601 Throop Street, Brooklyn, New York

**THIS PAYOFF STATEMENT IS NOT A LEGALLY BINDING INSTRUMENT OR AN OFFER TO ENTER INTO A CONTRACT, AND DOES NOT MODIFY YOUR LOAN DOCUMENTS. YOUR LOAN DOCUMENTS GOVERN THE AMOUNT OF YOUR PAYOFF. THE AMOUNT SHOWN ARE SUBJECT TO CHANGE PRIOR TO FINAL PAYOFF DUE TO ERRORS MADE OR UPON OUR DISCOVERY OF FACTS WARRANTING CHANGES DEEDED TO CONFORM TO THE LOAN DOCUMENTS, AND WE RESERVE THE RIGHT TO MAKE ANY SUCH ADJUSTMENTS. WE MUST ADD FEES FOR THE FORECLOSURE SALE PRIOR TO ANY PAYOFF BEING MADE.**