ARCHER & GREINER, P.C.                              Hearing Date: April 10, 2019
630 Third Avenue                                    Hearing Time: 10:30 a.m.
New York, New York 10017
Allen G. Kadish
Harrison H.D. Breakstone
Tel: (212) 682-4940
Email:  akadish@archerlaw.com
        hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                              Chapter 11

VORAS ENTERPRISE INC.,                              Case No. 1-17-45570 (NHL)

        Debtor.

---------------------------------------------------------x

**DEBTOR'S AMENDED
MEMORANDUM OF LAW
IN SUPPORT OF APPROVAL OF
AMENDED DISCLOSURE STATEMENT AND
<u>CONFIRMATION OF AMENDED CHAPTER 11 PLAN</u>**

TO THE HONORABLE NANCY H. LORD,
UNITED STATES BANKRUPTCY JUDGE:

      VORAS ENTERPRISE INC. ("**<u>Voras</u>**"), debtor and debtor-in-possession herein (the

"**<u>Debtor</u>**"), by and through its undersigned counsel, submits this amended memorandum of law in

support of final approval of the *Amended Disclosure Statement* dated June 19, 2018 [Docket No.

109] (the "**<u>Disclosure Statement</u>**") and confirmation of the *Amended Chapter 11 Plan* dated June

19, 2018 [Docket No. 110] (the "**<u>Plan</u>**") pursuant to section 1129 of Chapter 11 of title 11 of the

United States Code (the "**<u>Bankruptcy Code</u>**"), and respectfully states as follows:[1]

---

[1] This memorandum updates the original memorandum filed earlier as set forth in paragraph 14 below.

## PRELIMINARY STATEMENT

1.    The Debtor seeks confirmation of the Plan and believes that the terms of the Plan are fair to all Creditors[2] and the Plan satisfies each of the relevant provisions of section 1129 of the Bankruptcy Code necessary for confirmation.

2.    The Debtor has arranged for the Sale of its Building under the Plan.  Under the Plan, the Debtor will generate the Implementation Funds from the Sale proceeds, in order to provide a return to all Creditors.  The Sale is designed to yield proceeds more than sufficient to fund all Allowed Administrative, Priority, Secured and Unsecured claims in full, subject to certain limitations described in the Disclosure Statement and Plan.  The balance of the funds made available from the Purchaser will be paid to NEB as a charitable contribution.

## BACKGROUND

3.    On October 26, 2017 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.    The factual background regarding the Debtor, including its current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the first day declaration filed herein [Docket No. 6], incorporated herein by reference.

5.    The Debtor continues in possession of its property and continues to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or committee has been appointed in the case.

6.    On December 6, 2017, 124 NY filed a motion to dismiss the case or convert the case to one under Chapter 7 of the Bankruptcy Code under section 1112(b), or for relief from the automatic stay under sections 326(d)(1) and 362(d)(3) [Docket No. 34].  On January 11, 2018,

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

the Debtor filed its response and objection [Docket No. 51].  On February 14, 2018, the Debtor filed its supplemental response and objection [Docket No. 74].

7.    On January 24, 2018, the Debtor filed its Plan of Reorganization [Docket No. 63] and Disclosure Statement in Support of Plan of Reorganization [Docket No. 62], in compliance with its obligations as a "single asset" real estate debtor.

8.    On February 14, 2018, the Debtor filed its *Motion for an Order (I) Approving Debtors Disclosure Statement; (II) Approving Form and Manner of Notices and Ballots; (III) Approving Solicitation Materials and Solicitation Procedures; (IV) Fixing a Record Date and Establishing a Voting Deadline, and (V) Scheduling Hearing on Confirmation of Plan* [Docket No. 72].

9.    On May 4, 2018, the Debtor filed its *Amended Motion for Orders (a)(i) Approving Sale Procedures; (ii) Approving Stalking Horse Protections (iii) Scheduling Auction and Hearing Dates to Consider Sale of Certain Assets; (iv) Approving Form and Manner of Notice of Sale Procedures and Notice of Potential Assumption, Assignment, and/or Sale of Contracts and Leases; and (v) Granting Related Relief; and (b)(i) Authorizing the Sale of Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests (ii) Authorizing the Assumption, Assignment, and/or Sale of Certain Executory Contracts and Unexpired Leases Related Thereto; (iv) Providing for Payment of Sale Proceeds to Secured Lender; and (v) Granting Related Relief* [Docket No. 100] (the "**Amended Sale Procedures Motion**").  On May 8, 2018, a hearing was held on the Amended Sale Procedures Motion. No objections were filed prior to the hearing.  The proposed order approving sale procedures was negotiated between the Debtor and 124 NY and was submitted but not entered.

10.    On June 19, 2018, the Debtor filed its Plan and the *Amended Disclosure*

*Statement in Support of Amended Chapter 11 Plan* [Docket No. 109] (as may be further amended from time to time, the "**Disclosure Statement**");

11.    On  June 19, 2018, the Debtor filed its *Motion for an Order Approving Debtor's Amended Disclosure Statement* [Docket No. 111].

12.    On June 22, 2018, the Court entered an *Order (I) Preliminarily Approving the Debtor's Disclosure Statement; (II) Scheduling a Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of the Plan; and (III) Establishing Notice and Objection Procedures* [Docket No. 113] (the "**Disclosure Statement Order**").

13.    On or before June 25, 2018 the Debtor distributed notice materials as evidenced by the *Affidavit of Service* [Docket No. 114], consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Disclosure Statement Order, which Disclosure Statement Order also approved, among other things, notice procedures (the "**Notice Procedures**").

14.    On July 24, 2018, the Debtor filed the *Memorandum of Law in Support of Confirmation of the Amended Chapter 11 Plan* [Docket No. 119] (the "**Amended Plan Confirmation Brief**").  This Amended Plan Confirmation Brief is filed in order to address the approval by the New York State Attorney General.

15.    On July 24, 2018, the Debtor filed the *Declaration of Jeffrey E. Dunston in Support of Confirmation of Amended Chapter 11 Plan* [Docket No. 118].

16.    On December 26, 2018, the Debtor served the *Notice of Hearing to Consider Approval of Debtor's Amended Disclosure Statement and Confirmation of Debtor's Amended Plan of Reorganization* [Docket No. 137], as evidenced by the *Certificate of Service* [Docket No. 136], and filed further notice thereof [Docket Nos. 142, 144 and 146].

17.     In connection herewith, the Debtor is filing the *Declaration of Jeffrey E. Dunston in Further Support of Amended Chapter 11 Plan* (the "**Dunston Declaration**").

## ARGUMENT

## I.     The Disclosure Statement Should be Approved

18.     The Court provided preliminary approval of the Disclosure Statement as set forth above.  The Court should provide final approval of the Disclosure Statement.

19.     The Debtor submits that the Disclosure Statement should be approved by the Court as it sets forth "adequate information" sufficient to meet the requirements of section 1125(a) of the Bankruptcy Code.

20.     "Adequate information" is defined in the Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan, and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a).

21.     Thus, a debtor's disclosure statement must, as a whole, provide "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the class." *See Cadle Co. II v. PC Liquidation Corp.*

*(In re PC Liquidation Corp.),* 383 B.R. 856, 865 (Bankr. E.D.N.Y. 2008) *(citing In re Copy Crafters Quickprint,* 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties").

22.     In measuring the adequacy of the information contained in a disclosure statement, a bankruptcy court has broad discretion.  *See In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (S.D.N.Y. 1995).  Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See PC Liquidation,* 383 B.R. at 865*, citing Copy Crafters,* 92 B.R. at 979.

23.     In October 2005, section 1125(a) of the Bankruptcy Code was amended to specify certain factors that courts should consider when determining the adequacy of a disclosure statement, namely (1) the complexity of the case, (2) the benefit of additional information to creditors and other parties in interest, and (3) the cost of providing additional information.

24.     Courts have created a non-exhaustive list of factors that applies with the qualification that "[d]isclosure of all factors is not necessary in every case." *In re Metrocraft Publ'g Servs.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). The factors are:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof;    (12)  the  estimated  administrative  expenses,  including

> attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*Id.* (citations omitted); *see also In re Ashley River Consulting, LLC,* 2015 Bankr. LEXIS 3819 (Bankr. S.D.N.Y. Nov. 6, 2015)*; In re Phoenix Petroleum*, 278 B.R. 385, 406 n.6 (Bankr. E.D. Pa. 2001); 10 Collier on Bankruptcy ¶ 1125.02[2] at 1125.

25.     The Disclosure Statement, which the Debtor believes contains sufficient information with respect to the Plan and the Debtor's chapter 11 case, includes a description of:

> (i) the Debtor's pre-petition business operations; (ii) the restructuring efforts of the Debtor, including a description of the events leading up to the Debtor's chapter 11 case; (iii) the proposed distributions on account of secured claims and unsecured claims; (iv) the proposed treatment of administrative expense claims and priority claims; (v) the classification and proposed treatment of claims and equity interests; (vi) the proposed treatment and procedures for resolution of disputed, contingent and unliquidated claims; (vii) the proposed means of implementation of the Plan; (viii) the proposed treatment of executory contracts and unexpired leases; (ix) the proposed conditions precedent to the confirmation and effectiveness of the Plan; (x) the provisions of the Plan regarding releases, injunctions and exculpation; (xi) voting and confirmation procedures; (xii) a chapter 7 liquidation analysis; and (xiii) the federal income tax consequences to the Debtor and a hypothetical investor typical of the holders of claims in the case.

26.     The Debtor submits that the Disclosure Statement contains adequate information, as defined by the Bankruptcy Code and interpreted in relevant case law, for the Debtor's creditors to make an informed judgment about the Plan.  Accordingly, the Debtor respectfully requests that the Court approve the Disclosure Statement.

## II.        The Plan Satisfies Each Requirement for Confirmation

27.     To confirm the Plan, the Debtor must satisfy the provisions of section 1129

of the Bankruptcy Code by a preponderance of the evidence. *In re 20 Bayard Views, LLC,* 445 B.R. 83, 94 (Bankr. E.D.N.Y. 2011). The Plan complies with all relevant sections of the Bankruptcy Code (including sections 1122, 1123, 1125, 1126 and 1129), the Bankruptcy Rules and all applicable non-bankruptcy law.

### A. The Plan Complies with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

28.     Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code, including, principally, rules governing classification of claims and interests and the contents of a plan of reorganization. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (noting that "[t]he legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan") (internal citations omitted). Accordingly, the Plan will comply with section 1129(a)(1) of the Bankruptcy Code if sections 1122 and 1123 of the Bankruptcy Code are satisfied.

### i.     The Plan Satisfies the Classification Requirements of Section 1122

29.     The classification requirements of section 1122 of the Bankruptcy Code provide:

(a)     Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)     A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

8

30.    Section 1122(a) is satisfied "when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar." *In re PC Liquidation Corp.* 2006 WL 4567044 at *13 (Bankr. E.D.N.Y. Nov. 13, 2006). *See In re Jersey City Med. Ctr.,* 817 F.2d 1055, 1060-61 (3d Cir. 1987).

31.    In this Circuit, plan proponents have significant flexibility to place similar claims into different classes, provided there is a legitimate reason to do so. *See Aetna Casualty and Surety Co. v. Clerk, U.S. Bankr. Ct., N.Y., N.Y. (In re Chateaugay Corp.*), 89 F. 3d 942, 949 (2d Cir. 1996).

32.    The Plan provides for six different Classes based upon differences in the legal or factual nature of Claims. The Class structure satisfies section 1122 of the Bankruptcy Code. In general, the classification scheme is:

(i)    Class 1 provides for the separate classification of all Priority Claims;

(ii)    Class 2 provides for the separate classification of the MTAG Secured Claim;

(iii)    Class 3 provides for the separate classification of the 124 NY Secured Claim;

(iv)    Class 4 provides for the separate classification of Remaining Secured Claims besides the MTAG Secured Claim and 124 NY Secured Claim;

(v)    Class 5 provides for the separate classification of all General Unsecured Claims; and

(vi)    Class 6 provides for the separate classification of the NEB Unsecured Claim.

33.    Each Claim in a particular Class is substantially similar to the other Claims in such Class.

### ii.    *The Plan Satisfies Requirements of Section 1123(a)(1)-(a)(5)*

34.    The Plan satisfies section 1123(a) of the Bankruptcy Code, which requires that a plan, in pertinent part:

    (1)    designate classes of claims and interests;

    (2)    specify Unimpaired classes of claims and interests;

    (3)    provide the same treatment for each claim of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; and

    (4)    provide adequate means for the plan's implementation.

35.    The Plan satisfies sections 1123(a)(1), (2) and (3) of the Bankruptcy Code by: designating Classes of Claims and Interests, as required by section 1123(a)(1); and specifying the Classes that are Unimpaired under the Plan, as required by section 1123(a)(2).

36.    The Plan satisfies section 1123(a)(4) of the Bankruptcy Code because the treatment of each Allowed Claim within a Class is the same as the treatment of each other Allowed Claim in that Class.

37.    The Plan provides adequate means for its implementation, satisfying section 1123(a)(5) of the Bankruptcy Code.  The Debtor will have sufficient Implementation Funds to fund the creditor payments and other Plan obligations in full.  Under the Plan, on the Effective Date, the Debtor will generate the Implementation Funds from the Sale proceeds, in order to provide a return to all Creditors.  The Sale is designed to yield proceeds more than sufficient to fund all Allowed Administrative, Priority, Secured and Unsecured claims in full, subject to certain limitations described in the Disclosure Statement and Plan.

**B. The Debtor has Complied with the Applicable
   Provisions of the Bankruptcy Code
   (11 U.S.C. § 1129(a)(2))**

38.     The Debtor has satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. This provision is intended to encompass the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code and the plan acceptance requirements in section 1126 of the Bankruptcy Code. *See, e.g. In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636 (2d Cir. 1988) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code"). The Debtor distributed the Disclosure Statement in accordance with the Disclosure Statement Order.

> ***i.     The Debtor has Complied with the Disclosure
>          Statement and Solicitation Requirements of 11 U.S.C. § 1125***

39.     The Debtor has satisfied the requirements of section 1125 of the Bankruptcy Code, as provided in the Disclosure Statement Order. Before the Debtor began its notice of the Plan, the Court preliminarily approved the Disclosure Statement as containing adequate information. The Debtor distributed the Disclosure Statement in accordance with the Disclosure Statement Order, including with all respects to the content and delivery requirements set forth therein.

> ***ii.    The Debtor has Complied with the
>          Acceptance Requirements of 11 U.S.C. § 1126***

40.     The Debtor has complied with the acceptance requirements in section 1126 of the Bankruptcy Code. All Classes of Claims are conclusively presumed to accept the Plan

pursuant to section 1126(f) of the Bankruptcy Code, as they are Unimpaired under the Plan.

### C. The Plan was Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3))

41.     The Debtor submits that the Plan was proposed in good faith and satisfies all of the requirements of section 1129(a)(3) of the Bankruptcy Code. Section 1129(a)(3) of the Bankruptcy Code compels a bankruptcy court to reject a plan if not proposed in "good faith" or is "forbidden by law." This Circuit construes the good faith standard as requiring a showing that "the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Johns-Manville*, 843 F.2d at 649. Courts generally require that "good faith" be evaluated in light of the totality of circumstances surrounding confirmation. *Bayard Views,* 445 B.R. at 96.

42.     The Debtor has proposed the Plan with good intentions and a desire to provide a return to all Creditors and further the missions of the Debtor and NEB.

### D. The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4))

43.     The Plan complies with section 1129(a)(4) of the Bankruptcy Code, which requires, in pertinent part, that certain professional fees and expenses in connection with the case be approved by, or be subject to the approval of the court as reasonable. Section 3.3 of the Plan provides that all final requests for payment of Professional Fee Claims shall be filed with the Court and served on all parties in interest within thirty (30) days after the Effective Date. The Court shall consider payment of Professional Fee Claims pursuant to section 330 of the Bankruptcy Code. To the extent not allowed funds will be reserved at closing (on the Effective Date) for Professional Fee Claims.

**E. The Plan is in the Best Interests of Creditors**
**(11 U.S.C. § 1129(a)(7))**

44.     The so-called "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code requires that each individual holder of a claim has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251-52 (Bankr. S.D.N.Y. 2007). *See Bayard Views,* 445 B.R. at 98.

45.     No Creditor is Impaired under the Plan. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

46.     The Plan provides for better treatment of all creditors (*i.e.*, payment in full of allowed claims with interest) than if the Case were converted to a case under chapter 7 of the Bankruptcy Code which is likely to yield a minimal recovery for creditors at best. Thus, each Creditor will receive an amount not less than such Creditor would receive if the Debtor were liquidated pursuant to chapter 7 of the Bankruptcy Code.

**F. Acceptance by Impaired Classes**
**(11 U.S.C. § 1129(a)(8))**

47.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests accept the Plan or be Unimpaired thereby.

48.     No Creditor is Impaired under the Plan.

**G. The Plan Complies with Treatment of**
**Administrative and Priority Tax Claims**
**(11 U.S.C. § 1129(a)(9))**

49.     The Plan complies with section 1129(a)(9) of the Bankruptcy Code, which requires that Creditors holding allowed claims entitled to priority under section 507(a) of the

Bankruptcy Code be paid in full in cash, unless the holder thereof agrees to a different treatment with respect to such claim. In accordance therewith, Article IV of the Plan provides that Allowed Administrative Expense Claims and Priority Tax Claims shall be paid in full in Cash on the Effective Date, except to the extent that the holder of an Allowed Administrative Expense Claim or Priority Tax Claim agrees to a different treatment.

### H. The Plan is Feasible
### (11 U.S.C. § 1129(a)(11))

50.     Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court determine that confirmation is not likely to be followed by the liquidation or further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed by the Plan. The Plan focuses around the Sale of the Building.  On the Effective Date, the Debtor shall transfer and convey to the Purchaser title to the Building.  Thereafter, the Debtor will continue to exist to pursue (if it chooses to do so) the preserved causes of action under the Plan and conclude its case. Accordingly, section 1129(a)(11) is satisfied in such regard.

51.     Section 1129(a)(11) of the Bankruptcy Code further requires that the Court determine whether the plan is workable and has a reasonable likelihood of success.  *See  Kane v. Johns-Manville,* 843 F.2d at 649; *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003); *In re The Leslie Fay Cos.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997); *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 361 (Bankr. S.D.N.Y. 1995); *In re 8315 Fourth Avenue Corp.,* 172 B.R. 725 (Bankr. E.D.N.Y. 1994).  Those conditions are likewise satisfied.

52.     Upon the Sale, the Debtor will have sufficient funds from with which to make all distributions required under the Plan.  Therefore, the Plan is workable, has a reasonable likelihood of success.

I.  **The Plan Provides for Payment of All
    Bankruptcy Fees Under 28 U.S.C. § 1930
    (11 U.S.C. § 1129(a)(12))**

53.     The Plan complies with the requirements of section 1129(a)(12) of the

Bankruptcy Code.  Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees

payable under 28 U.S.C. § 1930.  Section 3.6 of the Plan provides that any outstanding United

States Trustee fees shall be paid in full in Cash on the Effective Date.

J.  **The Plan Complies With All
    Applicable Non-Bankruptcy Law
    (11 U.S.C. § 1129(a)(16))**

54.     The Plan complies with the requirements of section 1129(a)(16) of the

Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code requires that transfers of property

be governed by applicable non-bankruptcy laws.  The non-bankruptcy laws which govern sales of

property, belonging to a not-for-profit corporation, are sections 510, 511, and 511-a of the New

York Not-for-Profit Corporation Law ("**N-PCL**").

55.     Section 510 of the N-PCL applies when a transfer is for all, or substantially

all, of a not-for-profit organization's assets

56.     Section 511(d) of the N-PCL and applicable case law provides the Office of

the New York Attorney General a two-prong test for evaluating the Sale transaction. *See also In

re HHH Choices Health Plan, LLC*, 554 B.R. 697, 701 (Bankr. S.D.N.Y. 2016).

57.     The first prong of the test instructs the court or Attorney General to weigh

whether the consideration and the terms of the transaction are fair and reasonable to the

corporation.  As set forth in the Dunston Declaration and herein, the consideration and the terms

of the transaction are fair and reasonable to the Debtor, the Creditors and the Estate.

58.     The second prong instructs them to weigh whether, as a result of the

transaction, the purposes of the corporation or interests of the members will be promoted. The Debtor's stated purpose upon its organization in its certificate of incorporation was, (i) owning, developing, rehabilitating, mortgaging, leasing, maintaining and/or disposing of real property for the purpose of accommodating and promoting commercial and charitable activities intended to promote neighborhood revitalization and combat community deterioration; and (ii) conducting any and all lawful activities which may be useful in accomplishing the foregoing purposes. The Debtor submits that the disposition of the Building through the Sale is well within its corporate purpose.

59.    Section 1129(a)(16) requires that the transfer of property be governed by applicable non-bankruptcy law. Recently, Bankruptcy Courts have interpreted this to mean that they have the power to interpret and apply the applicable state or federal law to the proposed transaction and decide whether the transaction is consistent with those laws without having the plan confirmed by another court. *HHH Choices*, 554 B.R. at 701. While the Attorney General is still required to approve a petition for the sale of substantially all of the property of a non-for-profit organization, the Bankruptcy Court needs no other court's approval. *HHH Choices*, 554 B.R. at 700.

60.    The Debtor has sought and received Attorney General approval as set forth in the Dunston Declaration. Therefore, the Debtor has satisfied sections 510, 511, and 511-a of N-PCL the Plan complies with all applicable non-bankruptcy law pursuant to section 1129(a)(16) of the Bankruptcy Code.

### III.    The Discretionary Contents of the Plan are Appropriate and Should Be Approved

61.    The Plan contains various provisions that are not required for Confirmation under the Bankruptcy Code. The discretionary provisions (*e.g.*, providing for the assumption and assignment of all Executory Contracts and Unexpired Leases) comply with section 1123(b) of the

Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### A. The Plan's Release, Injunction and Exculpation Provisions are Appropriate and Should Be Approved

#### i. *The Releases Should Be Approved*

62.      The Releases contained in Article VIII of the Plan are fair and reasonable and essential to the Plan, and the beneficiaries of the Releases have provided valuable consideration under the Plan in exchange for such Releases.  No Creditors or parties in interest have objected to the Releases.

63.      Here, the Releases are consensual third party releases that should be binding on all parties that had notice and an opportunity to opt out but abstained from doing so.  In any event, all Creditors will be paid in full.

#### ii. *The Exculpation Provisions Should Be Approved*

64.      Pursuant to Article VIII of the Plan, the Debtor Released Parties are protected from liability to any person for any act or omission in connection with, relating to, or arising out of this Plan or the Case.

65.      Courts in this Circuit evaluate exculpation provisions based upon a number of factors, including whether the provision is integral to the plan and whether protection from liability was necessary for plan negotiations.  *See In re Bally Total Fitness of Greater N.Y., Inc.*, 2007 WL 2779438, at *18 (Bankr. S.D.N.Y. Sept. 17, 2007) (exculpation, release, and injunction provisions were "integral to the structure of the [p]lan and formed part of the agreement among all parties in interest embodied therein").

66.      The exculpation provisions are appropriate as they are narrow in scope and are limited to pre-petition and post-petition acts taken in connection with the Debtor's Plan.  In

any event, all Creditors will be paid in full.

### iii.    *The Injunctions Should be Approved*

67.    The confirmation injunction in Article VIII of the Plan is necessary to protect the Debtor and NEB from any potential litigation from prepetition creditors after the Effective Date with respect to any Claims against the Debtor.  *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 2009) (court may enjoin a creditor from suing a third party provided injunction plays an important part in plan).  Any such litigation would interfere with the Debtor's rights under the Plan and the transactions to be accomplished.

68.    The injunctions in the Plan are narrowly tailored to achieve their purpose and promote the confirmation of the Plan.

## B.  Tax Exemption

69.    Article X of the Plan provides for tax exemption to the fullest extent permitted under section 1146(c) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes but rather to provide a return for all Creditors and further the missions of both the Debtor and NEB.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Debtor submits that the Disclosure Statement complies with all applicable requirements of the Bankruptcy Code necessary for the Disclosure Statement to be approved, and the Plan complies fully with and satisfies all applicable requirements of the Bankruptcy Code necessary for the Plan to be confirmed.  The Debtor, therefore, respectfully requests that the Court finally approve the Disclosure Statement and confirm the Plan.

Dated:  New York, New York
      April 9, 2019

ARCHER & GREINER, P.C.

By:___ s/ Allen G. Kadish_____
    Allen G. Kadish
    Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Email: akadish@archerlaw.com
      hbreakstone@archerlaw.com

*Counsel for Voras Enterprise Inc.,*
*Debtor and Debtor-in-Possession*

216208540v3