UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

VORAS ENTERPRISE INC.
aka Voras Enterprises Inc.,

              Debtor.

----------------------------------------------------------x

Chapter 11

Case No. 17-45570 (NHL)

## ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING AMENDED CHAPTER 11 PLAN WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

VORAS ENTERPRISE INC., the above-captioned debtor and debtor-in-possession (the "**Debtor**")[1], having:

    a.    filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on October 26, 2017 (the "**Petition Date**");

    b.    continued to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code during the pendency of the Debtor's chapter 11 case; and

    c.    filed, on June 19, 2018, the *Amended Chapter 11 Plan* [Docket No. 110] (as may be further amended from time to time, the "**Plan**") and the *Amended Disclosure Statement in Support of Amended Chapter 11 Plan* [Docket No. 109] (as may be further amended from time to time, the "**Disclosure Statement**");

    d.    filed, on June 19, 2018, the *Motion for an Order Approving Debtor's Amended Disclosure Statement* [Docket No. 111];

    e.    submitted, and after a hearing on June 21, 2018, the Court having entered, on June 22, 2018, an *Order (I) Preliminarily Approving the Debtor's Disclosure Statement; (II) Scheduling a Combined Hearing to Consider Final Approval of Disclosure Statement and Confirmation of the Plan; and (III) Establishing Notice and Objection Procedures* [Docket No. 113] (the "**Disclosure Statement Order**");

    f.    distributed notice materials on June 25, 2018, as evidenced by the *Affidavit of Service* [Docket No. 114], consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Disclosure Statement Order, which Disclosure Statement Order also approved, among other

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in such terms in the Plan.

things, notice procedures (the "**Notice Procedures**");

  g.    filed, on July 24, 2018, *the Memorandum of Law in Support of Confirmation of the Amended Chapter 11 Plan* [Docket No. 119] and filed on April 9, 2019 the *Amended Memorandum of Law in Support of Approval of Amended Disclosure Statement and Confirmation of Amended Chapter 11 Plan* [Docket No. 150] (the "**Plan Confirmation Briefs**"); and

  h.    filed, on July 24, 2018, the *Declaration of Jeffrey E. Dunston in Support of Confirmation of the Amended Chapter 11 Plan* [Docket No. 118] and filed, on April 9, 2019, the *Declaration of Jeffrey E. Dunston in Further Support of Confirmation of the Amended Chapter 11 Plan* [Docket No. 152] (together, the "**Dunston Declarations**"); and

  i.    served the *Notice of Hearing to Consider Approval of Debtor's Amended Disclosure Statement and Confirmation of Debtor's Amended Plan of Reorganization* [Docket No. 137] on December 26, 2018, as evidenced by the *Certificate of Service* [Docket No. 136], and filed further notice thereof [Docket Nos. 142, 144 and 146]; and

this Court having:

  a.    entered the Disclosure Statement Order on June 22, 2018;

  b.    scheduled the date and time for the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "**Confirmation Hearing**"), pursuant to sections 1122, 1123, 1125, 1126, 1128 and 1129 of the Bankruptcy Code and Bankruptcy Rules 3016, 3017 and 3018;

  c.    considered pursuant to section 1129(a)(16), the approval of the Sale by the Attorney General of the State of New York, dated December 14, 2018;

  d.    considered the Disclosure Statement, the Plan, the Plan Confirmation Brief, the Dunston Declarations, and all pleadings, exhibits, statements, responses and comments regarding confirmation of the Plan filed with or made to the Court ("**Confirmation**");

  e.    heard the statements, arguments and representations made by counsel for the respective parties in respect of Confirmation;

  f.    considered all verbal representations, testimony, documents, filings and other evidence filed with or made to the Court regarding Confirmation;

  g.    held a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan at which the Court made certain findings of fact and conclusions of law and "so ordered" parts of the record of the hearing;

h.   overruled any objections to Confirmation; and

i.   taken judicial notice of all papers and pleadings filed in this Case,

NOW, THEREFORE, it appearing to the Court that notice of the Disclosure Statement, the Confirmation Hearing and the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby and that any party in interest so affected has had the opportunity to object; and, after due deliberation and based upon the record described above, it appearing to the Court that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Order:[2]

**IT IS HEREBY DETERMINED, FOUND, CONCLUDED, DECREED AND ORDERED:**

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

**A.    Jurisdiction and Venue**

1.   On the Petition Date, the Debtor commenced this chapter 11 case in this Court. Venue in this Court is proper and was proper as of the Petition Date pursuant to 28 U.S.C. § 1408. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Consideration of the Disclosure Statement and confirmation of the Plan are core matters under 28 U.S.C. § 157(b)(2)(A), (L), (N) and (O). This Court has exclusive jurisdiction to

---

[2]   The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. Capitalized undefined terms are as in the Plan.

[3]   The recitals set forth above are hereby incorporated into the Court's Findings of Fact and Conclusions of Law.

determine whether the Disclosure Statement should be approved and whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.        Eligibility for Relief**

2.        The Debtor was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

**C.        Commencement of the Bankruptcy Case**

3.        On the Petition Date, the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtor has operated its business and managed its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

**D.        Modifications to the Plan**

4.        Any and all modifications to the Plan since the entry of the Disclosure Statement Order, including as set forth on the record of the Confirmation Hearing, and in this Order, are consistent with the Bankruptcy Code, including sections 1122, 1123, 1125, 1127, 1128 and 1129. None of the modifications, if any, made since the entry of the Disclosure Statement Order effects a materially adverse change in the treatment of any holder of a Claim under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, no additional disclosure is necessary under section 1125 of the Bankruptcy Code.

**E.        Disclosure Statement Order**

5.        On June 22, 2018, the Court entered the Disclosure Statement Order, which, among other things: (a) preliminarily approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, subject to final approval by the Court at the Confirmation Hearing; (b) fixed July 19, 2018,

as the deadline for objecting to approval of the Disclosure Statement and confirmation of the Plan; (c) scheduled July 26, 2018, at 3:30 p.m., as the date and time for the Confirmation Hearing; and (d) approved the form and manner of notice of the Confirmation Hearing.  Further notice of the hearing to consider the Disclosure Statement and confirmation of the Plan was provided as set forth above.

6.     The Disclosure Statement meets the requirements of section 1125 of the Bankruptcy Code and merits approval under section 1125 of the Bankruptcy Code.

**F.     Transmittal and Mailing of Materials; Notice**

7.     Due, adequate and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all other deadlines for objecting to the Plan and with respect to Confirmation, has been given to: (a) all known creditors and parties in interest, and (b) all parties that requested notice in accordance with Bankruptcy Rule 2002, in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), and 3017, and no other or further notice is or shall be required. Adequate and sufficient notice of the Confirmation Hearing, and any applicable dates, deadlines and hearings described in the Disclosure Statement Order, was given in compliance with the Disclosure Statement Order and the Bankruptcy Rules, as evidenced by the Affidavits of Service, and no other or further notice is or shall be required.

**G.     Solicitation and Voting**

8.     As set forth in the Plan and Disclosure Statement, all Claimants are conclusively presumed to accept the Plan and, therefore, were not entitled to vote to accept or reject the Plan.

**H.     Bankruptcy Rule 3016**

9.      The Plan is dated and identifies the entity submitting it, the Debtor, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

## I.      Burden of Proof

10.     The Debtor, as proponent of the Plan, has met its burden of proving the elements of section 1129(a) (and, to the extent appropriate, section 1129(b)) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

## J.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code

11.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

### i.      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

12.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

#### a.      <u>Sections 1122 and 1123(a)(1)—Proper Classification</u>

13.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan provides for the separate classification of Claims into six Classes, based on differences in the legal nature or priority of such Claims (other than those Claims which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper

purpose and the creation of such Classes does not unfairly discriminate between or among Claimants.

14.     As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class. Thus, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### b.     <u>Section 1123(a)(2)—Specification of Unimpaired Classes</u>

15.     The Plan specifies that all Classes of Claims are Unimpaired under the Plan. The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### c.     <u>Section 1123(a)(3)—Specification of Treatment of Impaired Classes</u>

16.     The Plan specifies that no Claims are Impaired under the Plan.  The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### d.     <u>Section 1123(a)(4)—No Discrimination</u>

17.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan uniformly provides for the same treatment of each Claim in a particular Class.  The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### e.     <u>Section 1123(a)(5)—Adequate Means for Plan Implementation</u>

18.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan specifically provides for adequate and proper means for the Plan's implementation primarily through the post-confirmation sale (the "**<u>Sale</u>**") of the Debtor's real property at 601-619 Throop Avenue, Brooklyn, New York to Throop Owner LLC (the "**<u>Purchaser</u>**") as assignee of 619 Throop Acquisition LLC for the total purchase price of $12.0 million, less allowed adjustments, in accordance with that certain Contract of Sale dated June 18, 2018 (the "**<u>Sale Contract</u>**"), as attached to the Plan as an exhibit, as modified on the record of the Confirmation Hearing.  Mark Tress, the principal member

of 619 Throop Acquisition LLC, is a principal member of the Purchaser.  619 Throop Acquisition LLC, Mark Tress, Leah Tress and Throop Development LLC have entered into a joint venture agreement under which Throop Development LLC intends to acquire a 50% interest in the Purchaser upon confirmation of the Plan and approval of the Sale and additional interests in the future.  The assignment of the Sale Contract from 619 Throop Acquisition LLC to the Purchaser is hereby authorized and approved.

19.    "Purchaser" as defined at section 2.61 of the Plan and in the Sale Contract shall be Throop Owner LLC, a Delaware limited liability corporation.

### f.    <u>Section 1123(b)—Discretionary Contents of the Plan</u>

20.    The Plan may contain various provisions that are not required for Confirmation under the Bankruptcy Code. Such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### (i)    *Executory Contracts and Unexpired Leases*

21.    Pursuant to Article V of the Plan, the following Executory Contracts and Unexpired Leases shall be deemed assumed and assigned to the Purchaser on the Effective Date in accordance with, and subject to, the provisions and requirements of section 365 and 1123 of the Bankruptcy Code, with the Debtor responsible to pay all cure amounts: (i) existing first floor lease with Metro Urgent Medical Care of Brooklyn PLLC, and (ii) roof antenna lease held by New Cingular Wireless PCS, LLC.  The lease with Bedford Stuyvesant Family Health Center has terminated and such tenant has vacated its premises.  The Debtor's lease with Brooklyn Legal Services Corporation A ("**<u>BKA</u>**") will be assumed by the Debtor without a cure payment and assigned to the Purchaser on the Effective Date, subject to BKA's reciprocal agreement with the

Purchaser to terminate the lease on the Effective Date and surrender possession of its lease premises pursuant to the agreement annexed hereto as Exhibit A (the "**BKA Termination Agreement**").  The parties' execution of the BKA Termination Agreement is a condition to the assumption and assignment of BKA's lease to the Purchaser, is not subject to the Plan, and shall be binding and enforceable in accordance with its terms once this Order is entered and without regard to any stay or subsequent delay with respect to the Plan.  All other leases and executory contracts not otherwise expressly assumed under the Plan or this Order are deemed rejected.

(ii)    *Section 1146 Exemption from Certain Taxes and Fees*

22.    The exemption set forth in section 1146(a) of the Bankruptcy Code is applicable to the Plan and the transfer of the Debtor's property pursuant to the Plan, including, without limitation, the Debtor's sale of the Building to Purchaser as set forth herein.

(iii)    *Plan Releases, Injunction and Exculpation Provisions*

(A)    **Releases**

23.    The releases of claims and rights of action set forth in Article VIII the Plan and herein (the "**Releases**") and described in the Disclosure Statement, and as limited herein, are appropriate.  All parties were given due and adequate notice of the Releases.

24.    The Releases will not release the Debtor from its obligations under the Plan or the Sale Contract.

25.    The Releases are fair and reasonable and essential to the Plan, and the beneficiaries of the Releases have provided valuable consideration under the Plan in exchange for such Releases.

### (B)    Exculpations

26.    The exculpations set forth in Article VIII of the Plan and herein, and as limited herein, are appropriately tailored to protect the exculpated parties from inappropriate litigation.  The exculpations set forth in Article VIII of the Plan and this Order will not release or exculpate the Debtor from its obligations under the Plan or the Sale Contract.

27.    The scope of the exculpation provisions ~~are~~ is appropriately limited to the extent permitted under applicable law.

28.    The exculpation provisions are fair and reasonable and essential to the Plan, and the exculpated parties have provided valuable consideration under the Plan in exchange for their exculpations.

### (C)    Injunctions

29.    The injunctions set forth in Article VIII of the Plan and herein are necessary to effectuate the transactions incorporated into the Plan and, in particular, the Debtor's sale of the Building to the Purchaser and to protect the Debtor from any potential litigation from Creditors and other parties after the Effective Date relating to the Claims, which are being fully resolved pursuant to the terms of the Plan.  The injunctions set forth in Article VIII of the Plan and this Order will not exculpate or release the Debtor from its obligations under the Plan or the Sale Contract.

30.    Each of the release, injunction and exculpation provisions in the Plan: (a) is within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefit on, and is in the best interests of, the Debtor, its bankruptcy estate, and its creditors; and (e) is

consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code. The record of the Confirmation Hearing and the documents filed in support of confirmation of the Plan are sufficient to support the release, injunction and exculpation provisions contained in the Plan.

### (iv)    *Preservation of Causes of Action*

31.    Article VI of the Plan appropriately provides for the preservation of certain Causes of Action by the Debtor.  Retention of the Causes of Action by the Debtor is appropriate and is in the best interests of the Debtor, the Estate and all Creditors.[4]

### ii.    Section    1129(a)(2)—Compliance of the Debtor with the Applicable Provisions of the Bankruptcy Code

32.    The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

33.    The Debtor has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of recoveries under the Plan (the "**Distributions**") and, therefore, is not, and on account of such Distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(2) of the Bankruptcy Code.

### iii.    Section 1129(a)(3)—Proposal of Plan in Good Faith

---

[4] The Debtor preserved the right to pursue and defend itself in a landlord/tenant dispute with Brooklyn Legal Services Corporation A regarding non-payment of rent but all issues have been resolved and the Debtor no longer needs to preserve such right of action.  The Debtor preserves the right to pursue other causes of action as set forth on Exhibit 5.2 to the Disclosure Statement.

34.    The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Plan, its contents and the process leading to its formulation. The Plan was proposed with the legitimate and honest purpose of maximizing value for the benefit of the Debtor and the Debtor's Creditors.

35.    The Debtor, its counsel and all other professionals have conducted themselves in good faith in the conduct of this Chapter 11 case and in connection with the Plan.

### iv.    Section 1129(a)(4)—Approval of Certain Administrative Payments

36.    The Plan satisfies section 1129(a)(4) of the Bankruptcy Code. Article III of the Plan provides adequate procedures for the payment of Allowed Administrative Expense Claims and Allowed Professional Fee Claims.

### v.    Section 1129(a)(7)—Best Interests of Holders of Claims and Interests

37.    Article VI of the Disclosure Statement, the Dunston Declarations, and the other evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable, persuasive and credible.

38.    Based on the foregoing, the Debtor has established that each Claimant will receive under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests" test in section 1129(a)(7) of the Bankruptcy Code.

### vi.    Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

39.     All Claimants are Unimpaired under the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, all Claimants are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan.

**vii.     Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

40.     The treatment of Administrative Claims and Priority Tax Claims under Article IV of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**viii.     Section 1129(a)(11)—Feasibility of the Plan**

41.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at, or prior to, or in declarations filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive and credible; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that, once the Sale is consummated, the Debtor will have sufficient funds available to meet its obligations under the Plan.  The closing on the Sale shall occur on or before <u>May 31, 2019</u>, based upon payments described in paragraphs 68 and 69 below.  The Purchaser may obtain a further extension of the Closing Date until June 28, 2019 upon payment of additional sums as set forth in in paragraphs 68 and 69 below.  Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

### ix.    Section 1129(a)(12)—Payment of Bankruptcy Fees

42.    The Plan provides that the Debtor will pay in full, in Cash, any fees due and owing to the U.S. Trustee on the Effective Date. Accordingly, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied. Fees payable to the U.S. Trustee accruing after the Effective Date and any applicable interest shall be paid by the Debtor until entry of a final decree or until the case otherwise is closed.

### x.    Section 1129(a)(16)—Nonbankruptcy Law

43.    The Plan provides for the Sale of the Building in accordance with all applicable provisions of nonbankruptcy law that govern the transfer of property.

44.    The New York Attorney General has approved the Sale as stated above, and the Sale complies with sections 510, 511, and 511-a of the New York Not-for-Profit Corporation Law.

45.    Sections 1129(a)(5), (6), (10), (13), (14) and (15) are inapplicable to confirmation of the Plan.

### xi.    Section 1129(c)—Only One Plan Confirmed

46.    This Order confirms only the Debtor's Plan, satisfying section 1129(c) of the Bankruptcy Code. The Court has not considered confirmation of any other plan with respect to the Debtor, including the plans of reorganization previously filed by the Debtor in this Bankruptcy Case.

### xii.    Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes

47.    The principal purpose of the Plan is not the avoidance of taxes, thus satisfying the requirements of section 1129(d) of the Bankruptcy Code.

**K.        Satisfaction of Confirmation Requirements**

48.        Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**L.        Valuation of the Debtor's Building**

49.        The Court finds and concludes, based on the process implemented pursuant to the direction of this Court, and the evidence proffered or adduced at or prior the Confirmation Hearing, including the Dunston Declarations, that the Building's value is adequately reflected under the Sale Contract and other financial contributions made by the Purchaser.  Thus, the Sale and the Sale Contract constitute proper exercises of the Debtor's business judgment, and are fair and reasonable under the circumstances.  The consideration to be paid by the Purchaser constitutes fair and reasonable value for the Building under the Bankruptcy Code and New York Debtor and Creditor Law.  The Debtor has consented to the assignment of the Sale Contract to Purchaser.  The Sale Contract was negotiated at arm's length and the Purchaser qualifies as a good faith purchaser under section 363(m) of the Bankruptcy Code.

50.        The Purchaser is not, and shall not be considered or deemed a mere continuation of, or successor to, the Debtor in any respect, has not *de facto* or otherwise merged with or into the Debtor and is not a continuation or substantial continuation, and is not holding itself out as a mere continuation, of the Debtor, the Estate or the Debtor's business or operations.

**M.        Certain Agreements**

51.        The Debtor and the Purchaser have entered into certain agreements in furtherance of consummation of the Plan and the Sale, which are set forth below.

52.     The Purchaser and 124 NY, the Debtor's secured mortgage holder, have entered into ~~an~~ certain agreements in furtherance of consummation of the Plan and the Sale, which are set forth below.

53.     The Purchaser and BKA have entered into certain agreements in furtherance of consummation of the Plan and the Sale, including the BKA Termination Agreement which is described herein and approved as a fundamental condition of the Sale.  As such, the BKA Termination Agreement is fully enforceable against Purchaser and BKA, including execution on the warrant of eviction, as duly consented to by Purchaser and BKA, should BKA fail to timely and completely vacate its premises or should Purchaser fail to make any required payments thereunder.

**N.        Conditions Precedent to Confirmation**

54.     The conditions precedent to Confirmation as set forth in Article IX of the Plan will be satisfied upon entry of this Order, except as set forth in paragraph 68 below.

**O.        Implementation**

55.     All documents and agreements necessary to implement the Plan, and all other relevant and necessary documents have been negotiated in good faith, at arm's length, are in the best interests of the Debtor's creditors and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

**P.        Retention of Jurisdiction**

56.     The Court properly may retain jurisdiction over the matters set forth herein, and as set forth in, the Plan.

## II.  ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW AND UPON THE RECORD OF THE CONFIRMATION HEARING AND OTHER HEARINGS BEFORE THIS COURT IN THIS CASE, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

**A.     Approval of Disclosure Statement**

57.     The Disclosure Statement be, and hereby is, approved pursuant to section 1125 of the Bankruptcy Code.

**B.     Confirmation of the Plan**

58.     The Plan, be and hereby is, and each of its provisions be, and hereby are, confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code.

59.     Documents contemplated by the Plan, including the Sale Contract and the BKA Termination Agreement, shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and as set forth in the Plan.

**C.     Objections to Confirmation**

60.     Any objections, reservations of rights, statements, or joinders regarding Confirmation were resolved or are overruled.

**D.     Plan Classification Controlling**

61.     The terms of the Plan shall solely govern the classification of Claims for purposes of the Distributions to be made thereunder.

**E.**      **Matters Related to Implementation of the Plan**

  **i.**      **Property Transfer; Effectuating Documents; Further Transactions**

62.

(a) The Sale to the Purchaser and the execution, closing, and consummation of all documents, agreements and instruments required to be entered into and consummated as described in the Sale Contract, Plan and this Order are approved under, *inter alia*, sections 363(b), 363(f), 365, 1123(a)(5)(D) and 1146(a) of the Bankruptcy Code.   The Purchaser shall receive title, possession, and control of the Building, together with all improvements and related assets pursuant to the Sale Contract, free and clear of all liens, taxes, claims and non-permitted encumbrances and other interests including, all commercial leases and executory contracts, except for the leases of Metro Urgent Medical Care of Brooklyn PLLC and New Cingular Wireless PCS, LLC which will be assumed and assigned to the Purchaser on the Effective Date.   The Sale of the Building to the Purchaser shall be an absolute and irrevocable transfer of title to the Building, which has been made for fair consideration and reasonably equivalent value.   The Sale shall be in accordance with the Sale Contract, as modified by this Order and the record established in connection with the Confirmation Hearing, and be free and clear of all liens, claims, interests, taxes and non-permitted encumbrances pursuant to sections 363(b) and (f) and 1123(a)(5)(D) of the Bankruptcy Code, except that the mortgage is authorized to be assigned by 124 NY to the Purchaser's lender (if any) at the closing of the Sale on the Effective Date (with the entry of the judgment of foreclosure deemed vacated in order to effectuate the assignment of the mortgage, and the rights and obligations of (i) 124 NY as mortgagee thereunder transferred in all respects to the Purchaser's lender, and (ii) the Debtor as mortgagor thereunder terminated and released and replaced by the Purchaser).   Notwithstanding the immediately preceding sentence, the Sale shall not be free and

clear of any rights of tenants who are parties to the Unexpired Leases that are being assumed by the Debtor and assigned to the Purchaser, pursuant to section 363(b) and (f) of the Bankruptcy Code, or any subsections thereof, section 365, or any subsection thereof, section 1123(a)(5)(D) of the Bankruptcy Code, or otherwise.  The Purchaser is closing and consummating the Sale subject to the leasehold interests and the rights of the tenants in the Unexpired Leases that are being assumed and assigned.

(b) The Purchaser is closing and consummating the Sale in strict reliance on the BKA Termination Agreement, which is a critical condition of the Plan and this Order.  The Debtor will assume and assign the BKA lease to the Purchaser on the Effective Date, subject to the BKA Termination Agreement which is hereby approved (and which may be effective as between BKA and the Purchaser and enforceable by this Court or otherwise, as of a date specified therein). Pursuant to the BKA Termination Agreement, the Debtor, BKA and the Purchaser have compromised the dispute relating to BKA's security deposit, by fixing the security deposit in the sum of $8,000, with the Debtor responsible for payment of 50% and the Purchaser responsible for payment of 50% (*i.e.*, $4,000 each), provided, however, the Debtor shall be responsible for payment of the full $8,000 if the Purchaser does not close the Sale or otherwise defaults.

(c) In the event that the Debtor or the Purchaser fails to close the Sale and no Effective Date occurs (i) BKA shall still be entitled to the Purchaser's second $200,000 payment from escrow on the Surrender Date, as defined in the BKA Termination Agreement, and (ii) BKA shall be subject to the obligations to vacate and surrender no later than the Surrender Date and the Debtor shall accept delivery of possession of the leasehold premises and pro-rate the rent, as set forth in the BKA Termination Agreement.

(d) The BKA Termination Agreement may be enforced according to its terms, and both Purchaser and BKA have acknowledged that they consent, to enforcement of the warrant of eviction, should BKA fail to timely and completely vacate its leasehold premises or should Purchaser fail to make any required payments thereunder.

(e) Pending the Effective Date, the BKA lease remains in effect as between the Debtor, as landlord, and BKA, as tenant.  Any arrears shall be deducted against the second $200,000 payment described in paragraph 62(c).  In the event that such $200,000 payment is fully depleted prior to the Surrender Date then BKA shall continue to be liable for all amounts due under the BKA lease or the BKA Termination Agreement, and shall receive no further payment upon vacatur.  Upon the Closing Date the Debtor and the Purchaser shall make any adjustments such that BKA's payments are allocated as between the Debtor and the Purchaser based on which party owned the Building for the applicable period.

63.    This Order shall be deemed to amend the Plan to add a Section 9.2 as follows:

> 9.2   The Effective Date shall be the date of the "Closing" and the "Closing Date" as set forth in the Sale Contract.

64.    Effective as of the Closing Date, which is deemed the Effective Date for purposes of this Order and the Plan, the Debtor shall have no further responsibility to control, operate, carry on and manage the Building and shall turn over the Building to the Purchaser.  The Sale in its entirety shall be governed by the Sale Contract, the BKA Termination Agreement and this Order (with this Order to control in the event of a conflict).  The Purchaser is not, and shall not be considered, a successor to the Debtor under any theory of law, and is not responsible for any of the Debtor's claims, debts or liabilities arising prior to the Effective Date except as to the

extent governed by the BKA Termination Agreement and only to the extent in accordance therewith.

65.     On the Effective Date, the Debtor shall execute and deliver the Sale Contract and other closing documents in favor of the Purchaser and the Purchaser shall perform as set forth in the Sale Contract.

66.     On and after the Effective Date, the Debtor and the Purchaser are authorized and directed to issue, execute, deliver, file or record any contracts, instruments, releases and other agreements or documents related to the foregoing and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan including the Sale, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan or this Order.

67.     The Purchaser is a good faith purchaser as that term is used in section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereunder.

68.     The fees and expenses of the Debtor's real estate advisor, Keen-Summit Capital Partners LLC, as set forth in the *Order Granting Application to Employ Keen-Summit Capital Partners LLC as Real Estate Advisor for the Debtor* [Docket No. 106], shall be paid on the Effective Date as an expense of closing under the Sale Contract and from the Implementation Funds, in the amount of 5% of the 100-cent Plan Amount plus reasonable expenses, or such lesser amount as may be agreed among the parties, without further application to, or order of, the Court.

**ii.     Agreements in Support of Confirmation**

69.     As agreed between the Debtor and the Purchaser, the Purchaser shall pay to the Debtor, in care of Sperber Denenberg and Kahan, P.C., special real estate counsel to the Debtor, to be held in escrow and released to the Debtor on the Effective Date, to procure an extension of

the Effective Date, (a) if no Effective Date has occurred by March 31, 2019, $20,000.00 no later than three (3) business days after entry of this Order, and (b) if no Effective Date has occurred by April 30, 2019, $20,000.00 no later than May 1, 2019, for the month of May 2019, and (c) if no Effective Date has occurred by May 31, 2019, $50,000.00 no later than June 1, 2019 for the month of June 2019, through June 28, 2019.  Failure to make any such payment timely after three (3) business days' notice is deemed a default under the Sale Contract.  The outside Closing Date and Effective Date shall occur no later than June 28, 2019.  The Sale Contract shall not be deemed amended by these terms.  The foregoing escrowed sums shall be released to the Debtor on the Effective Date.  To the extent the Purchaser fails to close by June 28, 2019 through no fault of the Debtor or BKA, the Deposit (as defined in the Sale Contract) and the foregoing escrowed sums shall be released to the Debtor as liquidated damages for the Purchaser's failure to close, and the Plan shall be deemed to fail to have achieved the Effective Date.

70.    As agreed between 124 NY and the Purchaser, the Purchaser shall pay to 124 NY, in care of Stagg, Terenzi, Confusione & Wabnik, LLP ("**Terenzi**"), counsel for 124 NY, to procure an extension of the Effective Date, (a) if no Effective Date has occurred by March 31, 2019, $90,000.00, held in escrow by Terenzi for the month of April, 2019, shall be released to 124 NY upon entry of this Order, and (b) if no Effective Date has occurred by April 30, 2019, $90,000.00 no later than May 1, 2019, for the month of May 2019, and (c) if no Effective Date has occurred by May 31, 2019, $120,000.00 no later than June 1, 2019, for the month of June, 2019, through June 28, 2019.  Failure to make any such payment timely after three (3) business days' notice is deemed the Purchaser's default under the Sale Contract.  The outside closing date and Effective Date shall occur no later than June 28, 2019.  The foregoing sums are not a credit to the amounts owing to 124 NY from the Debtor except that no interest will accrue for the months of

April, May and June of 2019 to the extent that the payments are made by the Purchaser to 124 NY for extension of each such respective month.

71.    As agreed between the Purchaser and BKA, BKA's lease will be assumed and assigned to the Purchaser on the Effective Date, with no cure or further adequate assurance due from the Debtor under section 365(b) of the Bankruptcy Code, subject to the terms of the BKA Termination Agreement between the Purchaser and BKA, which shall be a condition to, and (as to the Debtor) coterminous with, the Effective Date.  Claim No. 9 filed on behalf of BKA, and all other claims of BKA that might be asserted against the Debtor, are withdrawn as of the Effective Date.

**F.    Section 1146 Exemption from Certain Taxes and Fees**

72.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, including an exemption for payment of any mortgage recording tax by the Purchaser in connection with its mortgage to purchase the Building and thereby implement the Plan, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

73.    Without limiting the foregoing:

a.    all filing officers (including without limitation, the City Register and/or County Clerk of Kings County, City of New York) are directed to: (i) accept for recording, and record, any and all deeds and other documents evidencing and/or relating to the Sale which are presented to them for recording, including the Sale Contract and the closing documents, and any mortgage obtained by the Purchaser to purchase the Building, immediately upon presentation thereof, with regard to the transactions effectuated under the Sale Contract and pursuant to the Plan and this Order,

without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the New York State Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code, any mortgage recording tax or any other tax within the purview of section 1146(a) of the Bankruptcy Code, and without the requirement of presentation of any affidavit or form with respect to any tax imposed under Article 31 of the New York State Tax Law, any New York City Real Property Transfer Taxes under section 11-2102 of the New York City Administrative Code with respect to the transactions effectuated pursuant to the Plan; and (ii) cancel and discharge of record all liens, encumbrances, claims and other adverse interests in or against the Building; and

b.      all filing officers (including, without limitation, the City Register and/or County Clerk of Kings County, City of New York) shall record the deed of the Building, and other similar conveyance documents required to be delivered under the Plan without the payment of any stamp tax, transfer tax, or similar tax, and without the presentation of affidavits, instruments, or returns otherwise required for recording or filing pursuant to section 1146(a) of the Bankruptcy Code.

## G.      Executory Contracts and Unexpired Leases

### i.      Assumption and Rejection of Executory Contracts and Unexpired Leases

74.

(a) Except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the assumption and assignment to the Purchaser of each of the Executory Contracts and Unexpired Leases under paragraph 21, are approved.  All Executory Contracts and Unexpired Leases that are not to be assumed and assigned under paragraph 21 of this Order are deemed rejected.

(b) Section 5.1(c) of the Plan is amended to provide in stead and place of the language set forth in the Plan:

> 5.1(c)    Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to this Plan, the Debtor shall, consistent with the requirements of section 365 of the Bankruptcy Code, following the Confirmation Date, file and serve on parties to executory contracts or unexpired leases to be assumed and other parties in interest (the "Cure Notice") listing the proposed cure (including amounts of compensation for actual pecuniary loss) to be paid in connection with the assumption of all Executory Contracts or Unexpired Leases to be assumed. The parties to such Executory Contracts or Unexpired Leases to be assumed shall have until 30 days following the Confirmation Date to object to the cure proposed by the Debtor, and to propose an alternative cure. In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed (including amounts of compensation for actual pecuniary loss) by the Debtor and shall be forever enjoined and barred from seeking any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code from the Debtor, its Estate, or any assignee of the contract or lease. If an objection is timely filed with respect to an Executory Contract or Unexpired Lease, the Bankruptcy Court shall hold a hearing to determine the amount of any disputed cure amount not settled by the parties. Notwithstanding anything otherwise to the contrary, at all times through the date that is five Business Days after the Bankruptcy Court enters an order resolving and fixing the amount of a disputed cure amount, the Debtor shall be authorized to withdraw its motion to assume such Executory Contract or Unexpired Lease by notice to the non-debtor party to such Executory Contract or Unexpired Lease.

## H.    Provisions Governing Distributions

75.    The distribution provisions of the Plan are hereby approved and authorized in their entirety and distributions shall be made as set forth therein.

76.    Section 6.1(a) of the Plan is amended to provide in stead and place of the language set forth in the Plan:

> 6.1(a)    The Debtor and the Purchaser shall close on the Sale of the Building on the terms set forth and according to the documents attached as Exhibit "A" hereto including the Sale Contract. The Debtor and the Purchaser shall seek approval for the Sale by the Office of the New York

Attorney General. The Sale proceeds are the source of the Implementation Funds and therefore, all distributions depend upon the closing and funding of the Sale. The Sale Contract provides for the Sale of the Building on an "as is" "where is" basis. The Sale shall be for all of Debtor's right, title and interest in and to the Building, together with all related fixtures, improvements and development rights, and subject to all zoning, landmarking and other potential restrictions. The Sale shall include the Debtor's assumption and assignment of all commercial leases designated by the Purchaser with any cure payments to be paid by the Debtor out of the Sale proceeds; no cure is anticipated. The Sale shall not include the Debtor's other property including books and records, cash, deposits with third parties, intellectual property, goodwill, tax attributes, claims and causes of action. The Sale shall be free and clear of all liens, claims, interests, taxes and non-permitted encumbrances pursuant to sections 363(b) and (f) and 1123(a)(5)(D) of the Bankruptcy Code, the Sale shall not be free and clear of any rights of tenants who are parties to the Unexpired Leases that are being assumed by the Debtor and assigned to the Purchaser, pursuant to section 363(b) and (f) of the Bankruptcy Code, or any subsections thereof, section 365, or any subsections thereof, section 1123(a)(5)(D) of the Bankruptcy Code, or otherwise. The Purchaser is closing and consummating the Sale subject to the leasehold interests and the rights of the tenants in the Unexpired Leases that are being assumed and assigned. The Purchase Price (as defined in the Sale Contract) shall be the sum of (i) the amount necessary to pay all administrative, professional, priority, secured, and unsecured claims and costs of closing in the Case in cash, in full, from the proceeds of sale (the "100-cent Plan Amount"); and (ii) the difference between the 100-cent Plan Amount and $12,000,000.00 (the "Charitable Contribution"). The Charitable Contribution shall be paid to the Debtor, as a charitable contribution.   All funds in excess of the Implementation Funds after all Effective Date and other Plan obligations are met shall be remitted to NEB (including the Charitable Contribution).

The Debtor and the Purchaser shall bear their respective closing costs and expenses consistent with customary practices. The Debtor shall pay all brokerage fees from the Sale proceeds upon Court approval as appropriate. To the extent any closing costs or obligations are not capable of being paid at closing, amounts therefore out of the Sale proceeds shall be escrowed or retained upon the agreement of the parties or otherwise as the Court may direct, to be paid promptly as allowed or fixed and held in accordance with the escrow terms set forth in the Sale Contract.

I.      **Release, Injunction, Exculpation, Discharge and Related Provisions**

i.      **Releases**

77.      The Releases in the Plan are hereby approved pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. Except as otherwise expressly provided in the Plan or this Order, on the Effective Date and effective simultaneously with the effectiveness of the Plan, each Claimant shall be deemed to have irrevocably waived and released and discharged the Debtor, NEB, and their affiliates or any of their respective officers, managers, directors, employees, members, partners, representatives, attorneys, professionals, predecessors, successors and assigns from and against any and all claims, liabilities, suits, actions, threatened actions, whether in law or in equity, that may have existed from the beginning of time to the Effective Date.

ii.      **Exculpations**

78.      The fullest extent permitted under applicable law and without affecting or limiting any release (as described above), and except as otherwise specifically provided in the Plan, the Debtor Released Parties shall be exculpated by and with respect to all parties (including the Debtor, NEB and all Creditors) from claims, liabilities, suits, actions and threatened actions, whether in law or in equity, that may have existed prepetition or action taken postpetition or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, implementing, or consummating the Plan or the Case.

iii.      **Injunctions**

79.      The injunctions in the Plan are approved.  Upon the occurrence of the Effective Date, the Order shall constitute an injunction against the commencement or continuation

of any action, the employment of process, or any act, to collect, recover or offset from the Building or the Debtor's other assets.

80.     Notwithstanding the foregoing, none of the release, exculpation or injunction provisions shall be deemed to waive or release the Debtor from its obligations under the Plan or the Sale Contract.

### iv.     Discharge

81.     Pursuant to section 1141(d)(1), entry of this Order discharges the Debtor from any debt that arose before the date of this Order, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

## J.     Additional Documents

82.     On or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and its officers and directors, as applicable, and all Claimants and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## K.     Conflicts

83.     If there is a direct conflict between the Plan and this Order, the terms of this Order shall control.

## L.     Existing Injunction and Stays Remain in Effect until Effective Date

84.     All injunctions or stays provided in, or in connection with, this Bankruptcy Case, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full

force and effect until the Effective Date.  Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Order.

## M.      Treatment is in Full Satisfaction

85.      The treatment set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each Claimant may have in or against the Debtor, the Estate or the Building.  This treatment supersedes and replaces any agreements or rights each Claimant may have against the Debtor or the Estate, except as set forth in the BKA Termination Agreement.

## N.      Post-Confirmation Notices and Professional Compensation

### i.      Notice of Confirmation and Effective Date

86.      In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) Business Days of the occurrence of the Confirmation Date pursuant to the terms of the Plan, the Debtor shall cause notice of Confirmation (the "**<u>Notice of Confirmation Date</u>**") to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice.

87.      In accordance with Bankruptcy Rules 2002 and 3020(c), within five (5) Business Days of the occurrence of the Effective Date pursuant to the terms of the Plan, the Debtor shall cause notice of the Effective Date (the "**<u>Notice of Effective Date</u>**") to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice.

88.      Mailing of the Notice of Confirmation Date and Notice of Effective Date in the time and manner set forth above is good and sufficient notice under the circumstances and

satisfies the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary or required.

89.     The Notice of Confirmation Date and Notice of Effective Date shall have the effect of orders of the Court, shall constitute sufficient notice of the entry of this Order and notice of the Effective Date to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### ii.     Professionals' Compensation

90.     Final fee applications for fees and expenses constituting Professional Fee Claims shall be filed and served on the Debtor and its respective attorneys, and the U.S. Trustee no later than thirty (30) days after the Confirmation Date.[5]  Objections to such final fee applications must be filed no later than seven (7) days prior to the hearing set to consider such filed fee applications. Any party in interest may object to any application or request for compensation or reimbursement. A Professional Fee Claim in respect of which a final fee application has been properly and timely filed and served shall become an Allowed Professional Fee Claim upon, and to the extent allowed by a Final Order.

### iii.     Bar Date for Administrative Expense Claims

91.     All parties seeking payment of Administrative Expense Claims (other than Professional Fee Claims), other than claims arising in the ordinary course of the Building's operations, shall file and serve such claims or applications no later than thirty (30) days after the Confirmation Date.[6]  Objections to such requests, if any, must be filed and served within forty five (45) days after the Confirmation Date (or such later date as extended by the Court for cause at the request of the Debtor).  **Any Person that is required  to file and serve a request for**

---

[5]  The Plan at paragraph 3.3 is so amended.
[6]  The Plan at paragraph 3.1 is so amended.

**payment of an Administrative Expense Claim and fails to timely file and serve such request, shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claim or participating in Distributions under the Plan on account thereof.** Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order, including all Administrative Claims expressly Allowed under the Plan.

## O.      General Authorizations

92.      Pursuant to section 1142(b) of the Bankruptcy Code, the Debtor and NEB are authorized, empowered and directed to (a) execute and deliver any instrument, agreement, or document and (b) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and consummation of the Plan, and are authorized, empowered, and directed, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan.

## P.      References to Plan Provisions

93.      The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in this Order shall not diminish or impair the effectiveness of such article, section, provision or document, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

## Q.      Non-Severability of Plan Provisions

94.      Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Court is: (a) valid and enforceable

pursuant to its terms, and (b) integral to the Plan and the transactions related thereto and may not be deleted or modified without the consent of the Debtor.

95.    If any term or provision of the Plan is determined by the Court to be invalid, void or unenforceable, the Court, at the request of the Debtor, may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation

## R.    Failure of Consummation

96.    If the consummation of the Plan does not occur, the Plan shall be null and void in all respects, except as to the BKA Termination Agreement – which shall remain in full force pursuant to its terms, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any claims by or Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor, NEB or any Claimant; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor, NEB or any Claimant.

## S.    Retention of Jurisdiction

97.    Notwithstanding the entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising under, arising in or out of, or relating to the Debtor's Case, the BKA Termination Agreement and the Plan to the fullest extent permitted by the Plan and governing law.

**T.**     **Stay; Appeals**

98.     With respect to Bankruptcy Rules 3020(e), 6004(h) and 7062, this Order shall not be subject to stay and shall be effective immediately upon entry thereof.

99.     On the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, NEB, the Purchaser and any and all Claimants, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and any and all other persons and parties.

100.     If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan and all related documents or any amendments or modifications thereto.

**U.**     **Authorization to Consummate**

101.     The Debtor and the Purchaser are authorized to consummate the Plan at any time, subject to the Sale Contract and satisfaction or waiver of the conditions precedent to the Effective Date set forth in the Plan.

**V.**     **Final Decree**

102.     The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements,

including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order or dismissal of the Chapter 11 Case.

103.    The Debtor shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

104.    Within fourteen (14) days following the full administration of the estate, the Debtor shall file, on notice to the U.S. Trustee, an application and a proposed order for a final decree pursuant to Bankruptcy Rule 3022.

105.    The Debtor shall file and serve upon the U.S. Trustee a closing report within sixty (60) days following substantial consummation of the Plan.

**W.    Pending Motions**

106.    As of the Effective Date, the (i) *Motion of Voras Enterprise Inc., Debtor, for Interim and Final Orders (I) Authorizing the Use of Cash Collateral, and (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing* [Docket No. 21], (ii) *124 NY's Motion for an Order (A) Dismissing or Converting the Debtor's Chapter 11 Proceeding, or, in the Alternative, (B) Granting Relief from the Automatic Stay* [Docket No. 34], and (iii) *Motion of Voras Enterprise Inc., Debtor and Debtor-in-Possession, for an Order Authorizing the Debtor to Enter Into Fire Protection System Maintenance Agreement* [Docket No. 92], be and hereby are, terminated as moot by the entry of this Order.



Dated: May 2, 2019
    Brooklyn, New York

                       **Nancy Hershey Lord**
                 **United States Bankruptcy Judge**